United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 07, 2026
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **R&R Transport and Logistics, LLP,** | § | **Case No. 25-36034 (JPN)** |
| **R&R Transport, Inc.** | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | **Subchapter V** |

**AMENDED**
**ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT**
**SUBCHAPTER V PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(A)**

The Court held a hearing (the "***Confirmation Hearing***") to consider confirmation of the Second Amended Joint Subchapter V Plan of Reorganization, ECF No. 112 (the "***Plan***") filed by R&R Transport and Logistics, LLP and R&R Transport, Inc. (the "***Debtors***"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "***Confirmation Order***").[1]

## I. JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2]

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan. All statutory references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless otherwise indicated.
[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, Chief Judge).

This Court determines that pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Debtors' main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This order supplements those findings and conclusions. If there is an inconsistency, this Order controls.

A. On October 9, 2025 (the "***Petition Date***"), the Debtors commenced these bankruptcy cases (the "***Cases***") by filing voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code. On October 30, 2025, the Court entered an Order for the joint administration of the Cases.[5] The Debtors have continued as Debtors in possession pursuant to 11 U.S.C. §§ 1108 and 1184.

[3] 11 U.S.C. § 157(b)(2).
[4] *Stern v. Marshall*, 564 U.S. 462 (2011).
[5] See ECF No. 16 (case 25-36034) and ECF No. 17 (case 25-36036)

B. On October 15, 2025, the Office of the United States Trustee filed a Notice of Appointment of Chapter 11 Subchapter V Trustee, ECF No. 5 (in case 25-36034) and ECF No. 3 (in Case No. 25-36036), appointing Thomas A. Howley as the subchapter V trustee in each Case (the "***Subchapter V Trustee***").

C. As of the Petition Date, the Debtors were and continue to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtors are the proper proponents of the Plan under 11 U.S.C. § 1189.

D. The Debtors have complied with 11 U.S.C. §1189(b). The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

E. The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Cases, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

F. All parties required to be given notice of the Cases, all deadlines in the Cases, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

G. The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtors' business operations; liquidation analyses; projections with respect to the Debtors' ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtors' post-petition income from future earnings to the supervision and control

of the trustee as is necessary for the execution of the plan.

H. The Debtors, as proponents of the Plan, have meet their burden of proving the applicable elements of 11 U.S.C. §§1191(a) by a preponderance of the evidence.

I. The Debtors shall serve as the Disbursing Agent under the Plan.

J. The Liquidation Analyses attached as Exhibits B-1 and B-2 to the Plan, as well as the testimony as to the value of the collateral securing the claims of the secured creditors in Classes 4A to 4J, Classes 5A to 5H, and Classes 5I to 5M, indicates that pursuant to 11 U.S.C. § 506(a), that the value of the collateral securing such claims is sufficient to only cover the Claims of the Secured Creditors in Classes 4A to 4J and 5A to 5H. The claims of the creditors in Classes 5I to 5M are unsecured because no value exists beyond the claims of senior secured creditors. In addition, Forward Financing, the holder of a Class 5M Claim has failed to perfect any purported security interests in the property of the Debtors under applicable law.

K. The Court finds that the proposed compromise between the Debtors and Fox Funding Group, Inc. and Union Funding Source, Inc and their election to Opt-In to the treatment of their claims pursuant to Section 8.4 of the Plan satisfies the standards for approval of a compromise and settlement of disputed matters pursuant to 11 U.S.C. § 1123(b)(3)(A), Bankruptcy Rule 9019, and the legal standards prescribed by *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc., v. Anderson*, 390 U.S. 414 (1968). The plan treatment of the Class 5I and Class 5J claims is fair and equitable and falls within the range of reasonable litigation outcomes, avoids costs, delay and uncertainty as to the resolution of complex legal and factual disputes over the financial accommodations and the Debtors' claims and defenses, and is in the interests of the estates.

L. As set forth in this paragraph, the Debtors have made certain clarifying

modifications to the Plan based on their discussions with creditors or to address the limited objection filed by Ryder Truck Rental, Inc., and such modifications which were made before confirmation of the Plan satisfy the standards under 11 U.S.C. § 1193. Such modifications and clarifications are as follows:

**Modification 1**—The definition of Administrative Claim in Section 2.1 which refers to section 507(a)(1) is a typographical error and is amended to refer to section 507(a)(2).

**Modification 2**—The definition of Disputed Claim is deleted and replaced in its entirety as follows:

> **2.34** **Disputed Claim**: A Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim, as to which an objection has been or is filed in accordance with the Plan, the Bankruptcy Rules, or the Local Rules, which objection has not been withdrawn or determined by Final Order.

**Modification 3**—Section 6.4 of the Plan is deleted and replaced in its entirety as follows:

> 6.4 **Payment Defaults of Priority Tax Claims and Secured Tax Lien Claims**. Notwithstanding Article 14 of this Plan, a failure by the Reorganized Debtors to make a payment on an Allowed Priority Tax Claim or a Secured Tax Lien Claim in Class 5A to 5E pursuant to the terms of this Plan shall be an event of default. If the Reorganized Debtors fail to cure an event of default as to the Plan payments within 10 Business Days after service of written notice of default from the holder of an Allowed Priority Tax Claim or the holder of a Secured Tax Lien Claim, then such holder of an Allowed Priority Tax Claim or the holder of a Secured Tax Lien Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate with the Bankruptcy Court. Written notice of default shall be served via email to Debtors' counsel, Joseph G. Epstein at joe@epsteintexaslaw.com and to the Debtors, attention Randy Russell at randy@corporatedelivery.com.

**Modification 4**—Section 7.1, Class 4E is clarified to include the additional language that "CDS is a guarantor of Loan No. xxxx4545."

**Modification 5**—A new Section 7.3(iv) is added to provide as follows:

> (iv) **Payment Method**. Pending further written instruction from Simmons Bank to the Debtors, all payments pursuant to Class 4J shall be paid by separate check or by ACH with a notation for "attorney's fees." Such payment should be delivered to the attention of Scott Babb, Loan Workout Specialist, Special Assets Group, Simmons Bank, 800 N. Arkansas Avenue, Russellville, AR 72801.

Accordingly, it is therefore

**ORDERED:** that

1. The Second Amended Joint Subchapter V Plan of Reorganization of Debtors filed on May 27, 2026 (ECF No. 112) and attached hereto as **Exhibit A** is hereby **CONFIRMED** and approved in each and every respect as a consensual plan pursuant to 11 U.S.C. § 1191(a), with the modifications set forth herein (the "***Plan***"). The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date. The terms of the Plan and the Debtors' or Reorganized Debtors' entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtors and Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2. To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3. Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtors' plan is substantially consummated, Debtors must file with the Court and serve on the Subchapter

V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4. Upon substantial consummation of the Plan, the duties of the Subchapter V Trustee in the Cases shall terminate as provided under 11 U.S.C. § 1183(c)(1). Nevertheless, the Subchapter V Trustee is not discharged pursuant 11 U.S.C. § 350(a) until such time as the Court enters its final decree and closes the Cases.

5. Not later than sixty (60) days after the Plan has been substantially consummated the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

6. The Debtors must request a hearing date on all final motions including the motion for final decree.

7. In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

8. Within three (3) calendar days after entry of this Order, the Debtors must serve notice of entry of this Confirmation Order ("***Notice***"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtors must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

9. The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on the Debtors; all holders of claims and Interests, regardless of whether they are Impaired under the

Plan and whether or not such holders of Claims and Interests voted to accept the Plan; and each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10. Except as otherwise set forth herein, the Debtors shall be and are hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtors will not be discharged of any debt or obligation: (i) imposed by this Plan; and (ii) excepted from discharge under 11 U.S.C. § 523 to the extent provided in 11 U.S.C. § 1141(d)(6). Notwithstanding the foregoing, the Debtors' discharge shall not take effect with respect to the claims of Ryder Truck Rental, Inc. ("Ryder") unless and until all payments contemplated by the Plan have been made.

11. The compromise of controversies pursuant to Bankruptcy Rule 9019 between the Debtors and Fox Funding Group, Inc. and Union Funding Source, Inc. is approved.

12. The following Plan modifications set forth in paragraph L of the Findings of Fact of this Order are hereby approved.

13. Except as otherwise provided in the Plan, all of the Debtors' assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtors pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order.

14. Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. The provisions of this section are not intended to restrict payment of any allowed claims which are not

disputed. Until a Disputed Claim is resolved, the Debtors must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the Disputed Claim. Upon resolution in favor of the allowed claim, the Debtors must distribute withheld funds to the claimant within the next payment period. If the Disputed Claim is disallowed, the Debtors must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

15. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

16. The Debtors and their respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

17. Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtors' schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtors on the Effective Date, and the Debtors shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtors on or before the Effective Date. After the Effective Date, the

Debtors may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

18. Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtors may file with the Bankruptcy Court objections to Claims and Interests and shall serve a copy of each such objection upon the holder of the Claim or Interest to which such objection pertains ("***Disputed or Undetermined Claim***"). Unless arising from an Avoidance Action, any Proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to; provided, however, that Ryder may amend its proof of claim after the Effective Date. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtors may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim not later than thirty (30) days after after the Effective Date. At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

19. Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in these Cases, or, if no proof of claim is filed, to the creditor's last known mailing address.

20. The Court shall retain jurisdiction of these cases for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

21. Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtors. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtors' bankruptcy case is subsequently converted to Chapter 7, all property of the Debtors shall automatically revest and become property of the bankruptcy estate of the Debtors in the converted Chapter 7 case.

22. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

23. No later than fourteen (14) calendar days from the Effective Date of the confirmed Plan, all professionals, including the Subchapter V Trustee, must file all final fee applications, pursuant to Fed. R. Bankr. P. 2016; and Debtors must file a motion for final decree, pursuant to Fed. R. Bankr. P. 3022 and 11 U.S.C. § 1106(a)(7).

24. This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed: July 07, 2026

Jeffrey P. Norman
United States Bankruptcy Judge

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **(SUBCHAPTER V)** |
| | § | |
| **R&R Transport and Logistics, LLP and,** | § | **CASE NO. 25-36034** |
| **R&R Transport, Inc.** | § | **CASE NO. 25-36036** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

**SECOND AMENDED JOINT SUBCHAPTER V**
**PLAN OF REORGANIZATION OF DEBTORS**

R&R Transport and Logistics, LLP and R&R Transport, Inc., the debtors and debtors in possession in these jointly administered Subchapter V Chapter 11 cases ("***Debtors***"), as the Proponents, propose this Second Amended Joint Subchapter V Plan of Reorganization ("***Plan***"), pursuant to the applicable provisions of sections 1129(a), 1189, and 1190 of chapter 11 of title 11, United States Code (the "***Bankruptcy Code***"), for the resolution of the Debtors' outstanding Claims and Interests.

This Plan has been prepared in accordance with Subchapter V and other applicable provisions of the Bankruptcy Code. The Plan is modeled on Official Form 425A (*Plan of Reorganization for Small Business Under Chapter 11*) and is designed to provide adequate information pursuant to section 1125(f) of the Bankruptcy Code to enable Holders of Claims against and Interests in the Debtors to make informed decisions whether to vote to accept or reject the Plan.

This Plan, including any amendments, supplements, and Exhibits thereto, the accompanying Ballot form, if any, and the related materials delivered to you are being furnished by the Debtors to Holders of Impaired Claims and Interests, in connection with the solicitation by the Debtors of votes to accept or reject the Plan.

**THE DEBTORS, AS PLAN PROPONENTS, URGE ALL HOLDERS OF CLAIMS AND INTERESTS IN IMPAIRED CLASSES RECEIVING BALLOTS TO ACCEPT THE PLAN. IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS VOTE ON THE PLAN. THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO ALL CREDITORS. THEREFORE, THE DEBTORS BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND RECOMMEND THAT ALL IMPAIRED CREDITORS VOTE TO ACCEPT THE PLAN.**

In deciding to accept or reject the Plan, Holders of Claims and Interests must rely on their own examination of the Debtors as described herein, including the merits and risks involved. You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the Plan. In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan. There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan will

be consummated. Even after the Effective Date, distributions under the Plan may be subject to delay so that Disputed Claims can be resolved.

**THIS PLAN INCORPORATES PROPOSED COMPROMISES OF CONTROVERSIES WHICH WILL BE PRESENTED AT THE CONFIRMATION HEARING PURSUANT TO BANKRUPTCY RULE 9019 AND *PROTECTIVE COMMITTEE FOR INDEPENDENT STOCKHOLDERS OF TMT TRAILER FERRY INC. V. ANDERSON*, 390 U.S. 414 (1968), WITH RESPECT TO ALLOWED CLAIMS OF THE MCA PARTIES, AS DESCRIBED IN THIS PLAN.**

The projected financial information contained herein has not been the subject of an audit, unless otherwise stated. With the exception of historical information, future events and matters discussed herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such forward-looking statements are subject to risks, uncertainties, and other factors which could cause actual results to differ materially. This Plan shall not be construed to be providing any legal, business, financial or tax advice. Each Holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby. Any Person or Entity holding or trading in or otherwise purchasing, selling, or transferring Claims against, Interests in the Debtors should evaluate this Plan only in light of the purpose for which it was prepared.

No party is authorized by the Debtors to give any information or make any representations with respect to the Plan other than that which is contained herein. No representation or information concerning the Debtors, their businesses, or the value of their properties and assets has been authorized by the Debtors, other than as set forth herein. Any information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein should not be relied upon by any Holders of Claims or Interests in voting on the Plan.

## ARTICLE 1

## BACKGROUND AND SUMMARY

Under Subchapter V, section 1190 of the Bankruptcy Code requires the Plan to include: (i) a brief history of the business operations of the Debtors; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtors to make payments under the proposed Plan of reorganization.

**EXCEPT AS OTHERWISE EXPRESSLY INDICATED, THE PORTIONS OF THIS PLAN THAT DESCRIBE THE DEBTORS, THEIR BUSINESS, ASSETS AND MANAGEMENT HAVE BEEN PREPARED FROM INFORMATION FURNISHED BY THE DEBTORS. WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, THE DEBTORS, THEIR LEGAL COUNSEL, ACCOUNTANTS, OR PROFESSIONAL CONSULTANTS MAKE NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION.**

## A. Description and History of Debtors' Business

R&R Transport, Inc. d/b/a Corporate Delivery Services ("***CDS***"), a Texas corporation was formed on August 5, 1992, by Randy Russell and Ray Cantrell, with ownership of 60% (Russell) and 40% (Cantrell). CDS initially focused on the greater Houston area courier services, handling small-package deliveries for commercial customers. Over time, the business grew steadily as demand for transportation services increased.

To meet customer demand for transportation, logistics and trucking services, and to address regulatory and insurance requirements for the expansion of operations, on October 11, 2005, the principals of CDS formed R&R Transport and Logistics, LLP, a Texas limited partnership ("***Logistics***"). R&R Transport and Logistics Management, LLC, a Texas limited liability company is the general partner of Logistics. Messrs. Russell and Cantrell own 50/50 Interests in each of Logistics and its general partner.

Since the formation of Logistics, the Debtors have provided transportation services throughout the contiguous lower 48 states of the United States. The Debtors handle shipments in sizes from envelopes to full tractor-trailer loads. A significant portion of the Debtors' work is focused on the construction industry, including the delivery of building materials and related products to construction job sites and distribution locations.

## B. Why the Debtors Commenced Subchapter V Cases

In the aftermath of the COVID-19 pandemic, the Debtors, and the transportation industry, have experienced pricing, liquidity and billing and collection issues. The Debtors' present financial difficulties arose primarily from external events outside the Debtors' control. During the COVID-19 pandemic, freight rates increased substantially and available trucking equipment became scarce nationwide. In order to continue to serve the needs of its customers and meet demand, the Debtors expanded their business and fleet of vehicles by purchasing additional equipment at above market, inflated prices due to industry-wide shortages. This equipment ultimately proved to be significantly overvalued as post-pandemic conditions normalized. Following the pandemic, freight rates declined sharply and have continued to fall for an extended period. This prolonged downturn in rates has materially reduced revenue and margins across the trucking industry, and for the Debtors specifically.

To finance their expansion, the Debtors incurred obligations to their senior secured bank and equipment lenders and the U.S. Small Business Administration. The claims of these parties are addressed below in the Classes of Claims for treatment under this Plan.

In addition to the industry challenges, the Debtors experienced a critical billing and collection issue with one of their largest customers following its merger with another company. Following the merger, the combined entity experienced internal billing and payment processing issues with its overseas back-office contractor, which resulted in substantial delays in payment to the Debtors for their services. As of early 2025, the past-due balance owed to the Debtors from the merged entity was approximately $500,000. Although the customer was financially capable of paying its obligations, the extended delay in payment significantly impacted the Debtors'

Case 25-36034 Document 152 Filed in TXSB on 07/27/26 Page 14 of 49

liquidity. The billing and payment issues with the customer have been resolved, and the merged entity is paying timely and is up to date on its account.

Because of the strain on liquidity, and the Debtors' inability to obtain additional traditional bank financing or lines of credit supported by assets or collateral, the Debtors were forced to seek financial accommodations from several merchant cash advance parties ("***MCA Parties***"). The MCA arrangements included the purported sale of the Debtors' accounts and/or receipts as provided in such agreements. Each of the MCA agreements contain extremely aggressive payment/effective interest rates. The extremely high payment terms of the MCA arrangements further exacerbated the Debtors' cash flow issues and contributed to the need to commence these Subchapter V cases. The Debtors are investigating whether any claims and/or causes of action should be pursued to set aside the agreements under applicable law, claw back payments, or object to such claims. As set forth below, the Debtors are preserving all potential claims against the MCA Parties as described in the applicable section of this Plan.

The Debtors commenced these cases in order to use the reorganization process to provide a single forum to address all pre-petition Claims against them in an efficient, cost-effective, and fair manner. In accordance with section 1184 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession. The United States Trustee for the Southern District of Texas appointed Tom A. Howley as the Subchapter V Trustee in these Chapter 11 Cases.

### C. Actions to Stabilize Business and Reduce Expenses During Chapter 11 Cases

Since filing these cases, the Debtors have taken meaningful steps to stabilize operations and return to profitability. The Debtors have:

- Surrendered unprofitable or underutilized equipment;
- Reduced operating expenses and overhead;
- Discontinued service to unprofitable customers and routes; and
- Focused operations on core, profitable customers and services.

The Debtors believe that these actions have positioned the businesses for long term viability. The Debtors intend to continue their newly streamlined, profitable operations and use future earnings to fund the Plan and satisfy creditor claims to the greatest extent possible. The Debtors are confident about their future prospects and their ability to successfully reorganize and emerge from these Subchapter V cases.

### D. Ability to Make Plan Payments and Operate Without Further Reorganization.

As Proponent of the Plan, Debtors must show that they will have enough Cash over the life of the Plan to make the required Plan payments and operate the Debtors' businesses. To operate

their businesses and make the required Plan payments, the Debtors will continue to operate their business in the ordinary course of business.

The Debtors' financial projections, which describe revenue generation from ordinary course sales, including applicable assumptions regarding such projections, are attached to the Plan as **Exhibits A-1 and A-2 (Plan Projections)**. As more fully set forth in **Exhibit A-1 and A-2**, the Debtors' Plan Projections show that the Debtors will have projected Disposable Income (as defined by section 1191(d) of the Bankruptcy Code) of approximately **$992,673** for the three-year Commitment Period described in section 1191(c)(2) of the Bankruptcy Code. The Disposable Income calculation is after payment of Allowed Secured Claims and Allowed Priority Claims under the Plan. During the three year Commitment Period, Holders of Allowed Secured Claims (including Class 5 Tax Claims and Other Claims) shall be paid approximately **$876,491** as provided by the loan agreements underlying such Claims, with additional payments due under the loan documents after the three year period. Likewise, Holders of Allowed Priority Claims shall be paid approximately **$19,407** during the first year of the Plan, with interest. Pursuant to the Plan Projections, annual Distributions of Disposable Income are anticipated to pay the holders of Allowed Class 6A General Unsecured Claims of Logistics approximately **85.42%** of the projected Allowed Claim and that holders of Allowed Class 6B of CDS will be paid in full. The Holders of Allowed General Unsecured Claims shall receive their respective *pro rata* share of such Distributions as described by this Plan. Finally, holders of Allowed MCA Claims are expected to receive distributions over the three year Commitment Period in the amount of **$169,248**, which will provide for an expected recovery of 33% as a compromise of disputed claims should the MCA Parties elect such treatment.

Section 1191(d)(2) of the Bankruptcy Code states that "disposable income" means "the income that is received by the debtor and that is not reasonably necessary to be expended—(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtors." The Bankruptcy Code does not provide any guidance on how to determine projected "disposable income," but that identical phrase appears at section 1325(b) of the Bankruptcy Code, and has been widely interpreted and applied. That approach starts with historical results that are given "presumptive" effect and "the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 560 U.S. 505, 524 (2010).

Here, the Debtors reviewed their historical performance and their financial results during the pendency of these cases. The Debtors projected sales based on growth rates over a historical baseline. The Debtors further projected improvements in the margins over time to account for anticipated cost-savings initiatives and other factors. Last, the Debtors projected the costs of the Plan process, including professional fees and interest on the secured debts owed to Simmons Bank and the other secured equipment lenders, which appear as "non-operating costs" in their model. The three-year Plan Period projections are summarized below:

In addition to the descriptions of revenue sources described herein and the Plan Projections forming the bases for distributions to creditors set forth in **Exhibit A-1 and Exhibit A-2**, the Debtors intend to continue formalizing business relationships that may ultimately supplement the Plan payments and result in a more expedited process for satisfaction of Allowed Claims and

Interests. If successful, each of these additional business opportunities and initiatives could further expedite payments under the Plan.

### E. Liquidation Analysis

If the Plan (or any other plan) is not confirmed, the Chapter 11 Cases may be converted to liquidations case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be appointed or elected to liquidate the assets of the Debtors. The proceeds of the liquidation would be distributed to Holders of Claims and Interests of the Debtors in accordance with the priorities established by the Bankruptcy Code. To confirm the Plan, the Bankruptcy Court must find that all Holders of Claims and Interests who do not accept the Plan will receive at least as much under the Plan as such Claim and Interest Holders would receive in a Chapter 7 liquidation.

In light of the Debtors' history and the amount of Claims against the Estates, the Debtors' liquidation analyses are relatively straight forward. A liquidation analysis for each Debtor is attached as **Exhibit B-1**.and **Exhibit B-2**. The Debtors have minimal cash on hand and a modest amount of receivables due to reinvesting funds into the businesses each month. The Debtors' primary non-liquid assets are their trucks, trailers, and related equipment. Simmons Bank, the US Small Business Administration, Hitachi Capital, and Ally Financial hold senior, secured claims against and liens on all the Debtors' assets. To the extent a Chapter 7 trustee could liquidate any unencumbered assets for Cash, the Debtors submit that distributions to Holders of Claims, if any, would be substantially less than the proposed Distributions under this Plan and the current Holders of Interests in the Debtors would receive nothing. Conversely, this Plan proposes to pay creditors partially over the life of the Plan and allows Holders of Interests to retain their equity in the Debtors.

Moreover, a liquidation under Chapter 7 of the Bankruptcy Code would result in a substantial diminution of the value of the interests of the creditors because of: (i) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (ii) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (iii) failure to realize any value of the Debtors' assets; and (iv) the substantial delay which would elapse before creditors would receive any distribution on account of their Claims. Accordingly, the Debtors believe that the Plan is far superior to liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code.

### F. Summary of Plan

As described in this Plan, the Reorganized Debtors will be responsible for payment of all amounts owed to the Holders of Allowed Claims from Disposable Income generated by the operation of the Debtors' businesses. All Holders of Claims against and Interests in the Debtors should refer to Articles 3 to 11 of this Plan for information regarding the precise treatment of their Claim or Interest and the priority of payments pursuant to the Plan.

## ARTICLE 2

## DEFINITIONS AND CONSTRUCTION OF TERMS

As used in the Plan, the following terms shall have the respective meanings specified below. A term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A term used in this Plan and not defined herein or in the Bankruptcy Code, but that is defined in the Bankruptcy Rules, has the meaning assigned to the term in the Bankruptcy Rules. Any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan and not to any section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or gender neutral include the masculine, feminine and the neuter. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. The rules of construction outlined in sections 102 and 1191(c) of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

2.1 Administrative Claim: A Claim, or the portion thereof, that is entitled to priority, as a cost or expense of administration of the Chapter 11 Cases incurred on or before the Effective Date, under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving a Debtor's Estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, certain taxes, fines and penalties, any actual and necessary post-petition expenses of operating the business of the Debtors, certain post-petition indebtedness or obligations incurred by or assessed against the Debtors in connection with the conduct of their business, or for the acquisition or lease of property, or for providing of services to the Debtors, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code.

2.2 Administrative Claimant: Any Person asserting entitlement to payment of an Administrative Claim.

2.3 Administrative Claim Reserve: That certain reserve of Cash to be established by the Debtors under the Plan for the payment of Allowed Administrative Claims (including Professional Fee Claims).

2.4 Allowed Claim: Any Claim against a Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest or such other applicable date as ordered by the Bankruptcy Court or permitted by the Bankruptcy Rules, or, if no Proof of Claim or Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and a Claim or Interest as to which no objection to the allowance thereof has been interposed, or in the case of Administrative Expense Claim recognized as such by a Debtor, or such Claim or Interest has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall

not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of such Claim.

2.5 Allowed Administrative Claim: An Administrative Claim to the extent it is or becomes an Allowed Claim.

2.6 Allowed Priority Non-Tax Claim: Any Claim to the extent Allowed and entitled to priority in payment under section 507(a) of the Bankruptcy Code.

2.7 Allowed Priority Tax Claim: Any Claim to the extent Allowed and entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

2.8 Allowed Secured Claim: A Secured Claim of a creditor to the extent such Claim is or becomes an Allowed Claim, and the Lien securing such Claim has not become an Avoided Lien.

2.9 Allowed General Unsecured Claim: A General Unsecured Claim against the Debtor to the extent it is or becomes an Allowed Claim.

2.10 Assumed Contracts: The executory contracts or unexpired leases of the Debtor assumed under Section 17.1 of the Plan.

2.11 Avoidance Action: All rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code.

2.12 Ballot: The ballot for voting to accept or reject the Plan

2.13 Bankruptcy Code: The Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, as applicable to the Chapter 11 Case.

2.14 Bankruptcy Court: The unit of the United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Cases, or in the event such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

2.15 Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of Bankruptcy Procedure for the Southern District of Texas, as applicable to the Chapter 11 Cases.

2.16 Bar Date: December 18, 2025, the deadline established by the Bankruptcy Court for filing proofs of claim or proofs of interest in the Chapter 11 Cases. Solely with respect to any governmental unit, "Bar Date" refers to April 7, 2026.

2.17 Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a Person other than a Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by federally insured banks, and money market accounts of federally insured banks.

2.18 Chapter 11 Cases: The voluntary bankruptcy cases filed by the Debtors under Subchapter V of Chapter 11 of the Bankruptcy Code on October 9, 2025, in the Bankruptcy Court and jointly administered under Case No. 25-36034.

2.19 Claim: Any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to any equitable remedy for future performance if such breach gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.20 Claimant: A person asserting a Claim against a Debtor, property of a Debtor, or a Debtor's Estate.

2.21 Claims Objection Deadline: The first business day following ninety (90) days after the Effective Date or any other date established by Final Order entered by the Bankruptcy Court modifying such deadline.

2.22 Class: A category of holders of Claims or Interests as classified by the Plan.

2.23 Collateral: Any property of a Debtor or interest in property of a Debtor which serves as security for the repayment of a debt or the performance of an obligation owed by a Debtor to the holder of an Allowed Secured Claim.

2.24 Commitment Period and Date of First Payment: Means, pursuant to section 1191(c)(2) of the Bankruptcy Code, all of the projected Disposable Income of the Debtors, beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan. The date that the first payment is due under the Plan to the holders of Allowed General Unsecured Claims shall be the first anniversary of the Effective Date of the Plan.

2.25 Confirmation Date: The date upon which the Confirmation Order is entered on the docket of the Chapter 11 Cases by the clerk of the Bankruptcy Court; provided, however, that if on motion the Confirmation Order or the consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of a Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

2.26 Confirmation Hearing: The hearing before the Bankruptcy Court to consider confirmation of the Plan.

2.27 Confirmation Order: The Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.28 Consummation: Means the occurrence of the Effective Date.

2.29 Creditor: Any person that holds a Claim against the Debtor that arose on or before the Petition Date, or a Claim against a Debtor of any kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

2.30 Debtor: Each of R&R Transport, Inc. d/b/a Corporate Delivery Services, a Texas corporation, and R&R Transport and Logistics, LLP, a Texas limited liability partnership.

2.31 Debtors-in-Possession: The Debtors in their capacity as Debtors-in-Possession pursuant to section 1182 of the Bankruptcy Code.

2.32 Deficiency Amount: The amount by which an Allowed Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with section 506(a) of the Bankruptcy Code. Any Deficiency Amount shall be treated as a General Unsecured Claim, but only if the holder of the Claim had recourse against a Debtor prior to any foreclosure on Collateral.

2.33 Disposable Income: Means, as defined by section 1191(c)(2) of the Bankruptcy Code, the income that is received by the debtor and that is not reasonably necessary to be expended — (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

2.34 Disputed Claim: A Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim, as to which an objection has been or is filed in accordance with the Plan, the Bankruptcy Rules, or the Local Rules, which objection has not been withdrawn or determined by Final Order. Prior to the time that an objection has been or is filed, for the purposes of the Plan, a Claim is a Disputed Claim to the extent that (i) the amount of a Claim specified in a proof of claim exceeds the amount of any corresponding Claim scheduled by a Debtor in its Schedules of Assets and Liabilities; (ii) any corresponding Claim scheduled by a Debtor in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been scheduled by a Debtor in its Schedules of Assets and Liabilities.

2.35 Distribution: A distribution of Cash or other non-Cash consideration or property made by a Debtor pursuant to the Plan.

2.36 Distribution Date: As to any Claim that is an Allowed Claim, the date upon which the later occurs: (i) a date selected by a Debtor that is not later than 30 days after the Effective Date, or (ii) as to Claims that become Allowed Claims by Final Order after the Effective Date, then within fifteen (15) days after becoming an Allowed Claim. The Debtors shall make periodic Distributions to the holders of Allowed General Unsecured Claims no more than once a year after the Effective Date.

2.37 Effective Date: The first Business Day following the fourteenth (14th) day (as calculated in accordance with Bankruptcy Rule 9006(a)), after the Confirmation Date, on which (a) the Confirmation Order is not stayed and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

2.38 Estate: The estate created upon the filing of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

2.39 Final Order: An order or judgment (i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired; or (ii) in the event of an appeal, writ

of certiorari, or motion for reargument or rehearing has been filed, such judgment or order has not been reversed, stayed, modified, or amended.

2.40 General Unsecured Claim: A Claim, other than a Secured Claim, an Administrative Claim, a Priority Non-Tax Claim, a Priority Tax Claim, or Insider not secured by a charge, mortgage or lien against or interest in property in which a Debtor's estate has an interest, including but not limited to any Deficiency Amount and any claim for damages resulting from the rejection of an executory contract or lease.

2.41 Impaired: Means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

2.42 Insider: The term "Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

2.43 Intercompany Claim: Any Claim against a Debtor on account of pre-petition goods, services, advances, or other intercompany financial accommodations or arrangements between the Debtors, as may be reflected in the Debtors' historical books and records of account.

2.44 Interest: Any interest in a Debtor represented by shares of common stock or general or limited partnership interests, including, to the extent provided by applicable law, any option or other security to acquire any of the foregoing.

2.45 Interest Holder: Any record holder or owner of an Interest.

2.46 Lien: A charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

2.47 Local Rules: The local bankruptcy rules for the Southern District of Texas prescribed by the Bankruptcy Court, as amended or modified from time to time.

2.48 MCA Parties: The parties that provided merchant financial arrangements and accommodations to the Debtors as described in Classes 5I to 5M.

2.49 Other Secured Claims: The Secured Claims separately classified under Class 5 of the Plan.

2.50 Person: An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

2.51 Petition Date: October 9, 2025, the date on which each Debtor filed its voluntary chapter 11 petition commencing this Chapter 11 Case, electing to proceed under Subchapter V of the Bankruptcy Code.

2.52 Plan: This Plan of Reorganization filed by the Debtors, as such Plan may be periodically amended or modified.

2.53 Plan Projections: Means the Debtors' financial projections describing revenue generation and calculations of Disposable Income to be distributed pursuant to the Plan, as more fully set forth in **Exhibits A1 and A2** to the Plan.

2.54 Priority Non-Tax Claim: Any Claim to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code and classified in Class 2 of the Plan.

2.55 Priority Tax Claim: Any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, and classified in Class 3 of the Plan.

2.56 Pro Rata: The proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class.

2.57 Professional: A professional employed in the Chapter 11 Case under sections 327 or 328 of the Bankruptcy Code.

2.58 Professional Fee Claim: A claim for compensation or reimbursement of expenses of a Professional retained in the Chapter 11 Case and requested in accordance with the provisions of sections 326, 327, 328, 330, 331, and 503(b) of the Bankruptcy Code.

2.59 Reinstate, Reinstated, or Reinstatement: Means with respect to a Secured Claim, that the Claim shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

2.60 Reorganized Debtors: As of the Effective Date, the Debtors as reorganized under the Plan.

2.61 Schedules: A Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

2.62 Secured Claim: A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of a Debtor's estate securing such Claim, or any Claim to the extent that it is subject to setoff under section 553 of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Amount.

2.63 Secured Tax Lien Claim: Any Claim based on ad valorem taxes on real or personal property secured by statutory liens under the Texas Property Tax Code and classified in Class 5A to 5E of this Plan.

2.64 Subchapter V Trustee: Thomas A. Howley, in his capacity as trustee pursuant to section 1183(a) of the Bankruptcy Code, as appointed by the Office of the United States Trustee in the Chapter 11 Cases.

2.65 Unimpaired: Means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 <u>Classification</u>. Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and (ii) the Claim or and Interest has not been paid, released, or otherwise compromised before the Effective Date.

3.2 <u>Identification of Classes of Claims and Interests</u>. The following are the designations for the Classes of Claims and Interests in the Debtors:

Class 1: Administrative Claims.

Class 2: Priority Non-Tax Claims.

Class 3: Priority Tax Claims.

Classes 4A to 4J: Simmons Bank Secured Claims.

Classes 5A to 5M: Other Secured Claims.

Classes 6A and 6B: General Unsecured Claims.

Class 7: Insider and Intercompany Claims.

Class 8: Interests in Debtors.

3.3 <u>Unimpaired Classes</u>: The claims of creditors in Classes 1, 2, 3, 4A to 4H, and 5A to 5J are not impaired under the Plan. Under section 1126(f) of the Bankruptcy Code, those Classes are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

3.4 <u>Impaired Classes Entitled to Vote on the Plan</u>: The claims of creditors specified in Classes 4I, 4J, 5K to 5M, 6A, 6B, and 7, and the Interests in Class 8, are impaired under the Plan. Holders of claims in the impaired classes are entitled to vote to accept or reject the Plan.

3.5 <u>Controversy Concerning Classification, Impairment or Voting Rights</u>: In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case. In addition, the Bankruptcy Court may in accordance with section 506(b) of the Bankruptcy Code conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

## ARTICLE 4

## PROVISIONS FOR TREATMENT OF ALLOWED ADMINISTRATIVE CLAIMS (CLASS 1)

4.1 **Treatment**: Allowed Administrative Claims (including Professional Fee Claims) will be paid in Cash, in full, on the Effective Date, or as soon as practicable after such claims become Allowed Claims if the date of allowance is later than the Effective Date, or in such amounts and on such other terms either as may be agreed on between the holders of such claims and the Debtors or the Reorganized Debtors, or according to the ordinary business terms agreed upon by, and the ordinary course of business of, the Debtors or the Reorganized Debtors and such holders. All requests for allowance of an Administrative Claim (including Professional Fee Claims and applications for reimbursement of expenses under section 503(b) of the Bankruptcy Code) must be filed with the Bankruptcy Court and served on the Debtors, the Subchapter V Trustee, and the U.S. Trustee within thirty (30) days following the Effective Date. Each Professional shall file with the Bankruptcy Court an estimate of its fees and expenses no later than 10 days prior to the Confirmation Hearing. Any Administrative Claim (including Professional Fee Claim) for which an application or request for payment is not filed within the deadline specified in this section shall be discharged and forever barred and will not be entitled to receive any distribution or payment under the Plan. The Debtors estimate approximately $120,000 to $150,000 in Allowed Professional Fee Claims, including claims by Joseph G. Epstein PLLC, Fuqua & Associates, and Howley Law PLLC. The Debtors intend on filing a formal objection to the Final Fee Application filed by Fuqua & Associates (ECF No. 110) which seeks allowance of $123,037.50 in fees.

4.2 **Payment of Allowed Administrative Claims**: Allowed Administrative Claims arising through the Confirmation Date shall be paid from the Administrative Claims Reserve within ten (10) days after the Allowance Date. Allowed Professional Fee Claims arising through the Effective Date shall be paid within ten (10) days after the Allowance Date (i) first from the balance of any retainers held by Professionals until fully exhausted and (ii) second from the Administrative Claims Reserve.

4.3 **Payment of Ordinary Course Liabilities**: Liabilities of the Debtors arising in the ordinary course of business shall be paid by the Debtors pursuant to existing payment terms and conditions in the ordinary course of the Debtors' business.

## ARTICLE 5

## PROVISIONS FOR TREATMENT OF ALLOWED PRIORITY NON-TAX CLAIMS (CLASS 2)

5.1 **Treatment**: Except to the extent a holder of an Allowed Priority Non-Tax Claim in Class 2 agrees to a different treatment or has been paid prior to the Effective Date, on the later of the Effective Date, or the date the Claim becomes an Allowed Class 2 Claim, each holder of such a Claim will receive, in full satisfaction of such Allowed Claim, cash equal to the amount of the Allowed Claim. All Class 2 Priority Non-Tax Claims not due and payable on or before the Effective Date will be paid in the ordinary course of business in accordance with the terms thereof.

No Non-Tax Priority Claims were listed in the Schedules, and no proofs of claim have been filed claiming priority under the Bankruptcy Code. The Debtors estimate $0.00 in Class 2 Claims.

5.2 **Payment**: Allowed Priority Non-Tax Claims shall be paid by the Debtors from the Priority Non-Tax Reserve.

## ARTICLE 6

## PROVISIONS FOR TREATMENT OF ALLOWED PRIORITY TAX CLAIMS (CLASS 3)

6.1 **Treatment**: Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by a Debtor prior to the Effective Date or agrees to a different treatment, each holder of a Class 3 Priority Tax Claim will, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive on account of such Claim deferred cash payments of a total value as of the Effective Date of the Plan, equal to the amount of such Claim, with interest at the rate set forth in this Article 6 below, either (A) within 180 days after the Effective Date, or (B) over a period not exceeding five years from the Petition Date. The Debtors estimate that the Texas Comptroller of Public Accounts holds an Allowed Class 3 Claims in the amount of $19,407.49. The General Unsecured Claim of the Texas Comptroller of Public Accounts in the amount of $2,149.12 shall be treated as an Allowed General Unsecured Claim pursuant to Class 6 of this Plan.

6.2 **Payment**: If deferred Cash payments are made to a holder of an Allowed Priority Tax Claim, payments of principal will be made in annual installments, each such installment amount being equal to twenty percent (20%) of such Allowed Priority Tax Claim plus accrued and unpaid interest at the per annum rate of seven and three-quarters percent (7.75%) simple interest, with the first payment to be due on the Effective Date, and subsequent payments to be due on each successive anniversary of the first payment date or as soon thereafter as is practicable; provided, however, that any installments remaining unpaid on the date that is five years after the Petition Date that is the basis of the Allowed Priority Tax Claim will be paid on the first Business Day following such date, together with any accrued and unpaid interest to the date of payment; provided, further, that the Reorganized Debtors reserve the right to pay any Class 3 Allowed Priority Tax Claim, or any remaining balance of such Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.

6.3 **Preservation of Texas Comptroller Rights**. Notwithstanding the discharge provided by Article 13 of this Plan and the Confirmation Order, (a) the rights of setoff of the Texas Comptroller of Public Accounts shall be preserved under section 553 of the Bankruptcy Code, (b) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file an application, motion, or request for payment, or a proof of claim for any amounts coming due after the Petition Date, (c) amounts coming due after the Petition Date shall be reported and paid timely under and in accordance with applicable Texas law, and (d) these Chapter 11 cases, this Plan, and the Confirmation Order shall not impair or limit the Texas Comptroller's rights, if any, to pursue collection against non-debtor third party individuals or entities as long as the Reorganized Debtors pay the Allowed Class 3 Claims of the Texas Comptroller as provided herein.

6.4 **Payment Defaults of Priority Tax Claims**. Notwithstanding Article 14 of this Plan, a failure by the Reorganized Debtors to make a payment on an Allowed Priority Tax Claim pursuant to the terms of this Plan shall be an event of default. If the Reorganized Debtors fail to cure an event of default as to the Plan payments within 10 Business Days after service of written notice of default from the holder of an Allowed Priority Tax Claim, then such holder of an Allowed Priority Tax Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate with the Bankruptcy Court.

## ARTICLE 7

## PROVISIONS FOR TREATMENT OF THE ALLOWED SECURED CLAIMS OF SIMMONS BANK (CLASSES 4A TO 4J)

7.1 **Classes 4A to 4H**: The rolling stock, equipment, and unmatured business loans held by Simmons Bank are classified in separate Allowed Class 4A to 4H Claims, and treated as provided in Section 7.1(i):

a. **Class 4A**—Simmons Bank as successor to Spirit of Texas Bank SSB, Loan No. xxxx1525 to Logistics dated January 14, 2022, in the original principal amount of $65,500.00, payable in 84 installment payments of $920.12 that began on February 14, 2022, with a final payment due on the maturity date of January 14, 2029. CDS is a guarantor of the loan. Repayment of the Loan is secured by a Texas Certificate of Title on a 2021 Chevrolet Silverado Truck (VIN#1HTKHPVK4MH813968) in possession of Simmons Bank and the grant and liens and security interests in the property pursuant to a Security Agreement dated January 14, 2022. The outstanding balance owing on Loan 1525 was $28,346.95 as of May 1, 2026.

b. **Class 4B**—Simmons Bank as successor to Spirit of Texas Bank SSB, Loan No. xxxx1534 to Logistics dated January 24, 2022, in the original principal amount of $155,513.00, payable in 84 installment payments of $2,184.58 that began on February 24, 2022, with a final payment due on the maturity date of January 24, 2029. CDS is a guarantor of the loan. Repayment of the Loan is secured by a Texas Certificate of Title on a 2022 Freightliner Truck (VIN#3AKJHHDR3NSNC4097) in possession of Simmons Bank and the grant of liens and security interests in the property pursuant to a Security Agreement dated January 24, 2022. The current outstanding balance owing on Loan 1534 was $67,373.31 as of May 1, 2026.

c. **Class 4C**—Simmons Bank as successor to Spirit of Texas Bank SSB, Loan No. xxxx1560 to Logistics dated February 22, 2022, in the original principal amount of $73,800.00, payable in 84 installment payments of $1,036.64 that began on March 22, 2022, with a final payment due on the maturity date of February 22, 2029. CDS is a guarantor of the loan Repayment of the Loan is secured by a Texas Certificate of Title on a 2021 Chevrolet Silverado 65000HD Truck (VIN#1HTKHPVM4MH682252) in possession of

Simmons Bank and the grant and liens and security interests in the property pursuant to a Security Agreement dated February 22, 2022. The outstanding balance owing on Loan 1560 was $32,885.80 as of May 1, 2026.

d. **<u>Class 4D</u>**—Simmons Bank as successor to Spirit of Texas Bank SSB, Loan No. xxxx1604 to Logistics dated March 23, 2022, in the original principal amount of $80,559.00, payable in 84 installment payments of $1,139.94 that began on April 23, 2022, with a final payment due on the maturity date of March 23, 2029. CDS is a guarantor of the loan. Repayment of the Loan is secured by Texas Certificates of Title on two 2022 Great Dane 48' Flatbed Trailers (VIN#1GR4M9626NH337130) and (VIN#1GR4M9626NH337131) in possession of Simmons Bank and the grant of liens and security interests in the property pursuant to a Security Agreement dated March 23, 2022. The current outstanding balance owing on Loan 1604 was $35,736.56 as of May 1, 2026.

e. **<u>Class 4E</u>**—Simmons Bank as successor to Spirit of Texas Bank SSB, Loan No. x4545 to Logistics dated August 27, 2021, in the original principal amount of $52,000.00, payable in 60 installment payments of $977.01 that began on September 27, 2021, with a final payment due on the maturity date of August 27, 2026. Repayment of the Loan is secured by a Texas Certificate of Title on a 2020 Freightliner Cascadia 125 Truck (VIN#3AKJGLFG4LSLL6983) held by Simmons and the grant of liens and security interests in the Property pursuant to a Security Agreement dated August 8, 2021. The current outstanding balance owing on Loan 14545 was $3,837.47 as of May 1, 2026.

f. **<u>Class 4F</u>**—Simmons Bank Loan No. xxxx4780 to Logistics and CDS (jointly and severally as borrowers and debtors) dated September 17, 2024, in the original principal amount of $350,000, payable in 60 variable monthly installments as described in the note, which began on October 15, 2024, with a final payment due on the maturity date of September 15, 2029. Repayment of the Loan is secured by the grant and liens and security interests in all of the assets of Logistics and CDS pursuant to Commercial Security Agreements dated September 17, 2024. The obligations represented by Loan 4780 represents the renewal, extension, and modification of indebtedness originally extended on July 28, 2016, which was perfected by the filing of an initial UCC-1 financing statement filed July 28, 2016, under no. 16-0024922460, with continuation filed March 19, 2021, under file number 21-00108595, and with a Party Information Change to Simmons filed June 1, 2022, under file number 22-00274750, a further financing statement filed September 14, 2023, under file number 23-0039957179 [naming CDS as debtor], a further financing statement filed September 14, 2023, under file number 23-0039958322 [naming Logistics as debtor], a further financing statement filed October 19, 2023, under file number 23-0045135780 [naming CDS as debtor], a further financing statement filed June 8, 2017, under file number 17-0019612168, [naming

Logistics as debtor], a continuation statement filed March 18, 2022, under file number 22-00136439, a Party Information Change to Simmons filed June 1, 2022, under file number 22-00274749, a continuation filed June 6, 2022, under file number 22-00284084, an additional financing statement filed September 29, 2022, under file number 22-0048072146, and a further financing statement filed September 14, 2023, under file number 23-0039958322, each filed with the Texas Secretary of State. The obligations under Loan 4780 are cross collateralized with Simmons Bank Loan 4806. The outstanding balance owing on Loan 4780 was $280,155.96 as of May 1, 2026.

g. **Class 4G**—Simmons Bank Loan No. xxxx9183 to Logistics dated July 18, 2022, in the original principal amount of $86,963.00, payable in 83 monthly installments of $1,263.65 described in the note, which began on August 18, 2022, with a final payment of $1,263.44 due on the maturity date of July 18, 2029. CDS is a guarantor of the loan. Repayment of the Loan is secured by a Texas Certificate of Title on two 2022 Great Dane Trailers (VIN#1GRD4M9624NH337126) and (VIN#1GRD4M962XNH337129) in possession of Simmons Bank and the grant of liens and security interests in the property pursuant to a Commercial Security Agreement dated July 18, 2022. The outstanding balance owing on Loan 9183 was $44,743.97 as of May 1, 2026.

h. **Class 4H**—Simmons Bank as successor to Spirit of Texas Bank SSB (SBA Loan Number PLP 1602567000) [Loan 6641] to CDS dated December 12, 2017, in the original principal amount of $450,000.00, payable over 120 monthly installments (with varying interest rate adjustments as described in the note), which began on January 1, 2018, with a final payment due on the maturity date of December 12, 2027. Logistics is a guarantor of the loan. Repayment of the Loan is secured by a Security Agreement dated December 12, 2017, granting the secured party a lien on all of the debtor's equipment, machinery, FF&F, accounts, proceeds, inventory, general intangibles, commercial tort claims and all related assets as described therein, perfected by the filing of an initial UCC-1 financing statement on filed December 12, 2017, under no. 170041675687 with the Texas Secretary of State, and continued thereafter by continuation filings and assignments [UCC 230039957179 filed September 14, 2023]. The outstanding balance owing on Loan 6641 was $97,689.30 as of May 1, 2026, which the Debtors are reviewing as potentially overstated. .

i. **Treatment**: For each of the respective loans described in Class 4A to 4H, the Reorganized Debtors will reinstate each of the Loans and cure any monetary defaults thereunder such that on the Effective Date, Simmons Bank will receive on account of its Allowed Secured Claims in Classes 4A to 4H, treatment as provided under section 1124 of the Bankruptcy Code, with any Cash payments required under section 1124(2) of the Bankruptcy

Code being made on the Effective Date. Simmons will retain the Liens securing the Allowed Secured Claims in Classes 4A to 4H until paid in full.

7.2 **Class 4I:** The matured working capital line of credit loan of Simmons Bank is classified as a separate Allowed Class 4I Claim as follows, and treated as provided in Section 7.2(b):

a. **Class 4I**— Simmons Bank Loan No. xxxx4806 to Logistics and CDS (jointly and severally as borrowers and debtors) dated September 15, 2024, in the original principal amount of $400,000, as modified by that certain Change in Terms Agreement dated September 15, 2024, payable in a single installment of all principal and unpaid accrued interest on the maturity dated of September 15, 2025, which was extended to December 15, 2025. Repayment of the Loan is secured by the Debtors' grant of liens and security interests in all of the inventory, equipment, accounts, proceeds, general intangibles, and accessions and replacements as described in the Commercial Security Agreements dated September 15, 2024. The indebtedness for Loan 4806 represents the renewal, extension, and modification of indebtedness originally extended on July 28, 2016, which was perfected by the filing of an initial UCC-1 financing statement filed July 28, 2016, under no. 16-0024922460, with continuation filed March 19, 2021, under file number 21-00108595, and with a Party Information Change to Simmons filed June 1, 2022, under file number 22-00274750, a further financing statement filed September 14, 2023, under file number 23-0039957179 [naming CDS as debtor], a further financing statement filed September 14, 2023, under file number 23-0039958322 [naming Logistics as debtor], a further financing statement filed October 19, 2023, under file number 23-0045135780 [naming CDS as debtor], a further financing statement filed June 8, 2017, under file number 17-0019612168, [naming Logistics as debtor], a continuation statement filed March 18, 2022, under file number 22-00136439, a Party Information Change to Simmons was filed June 1, 2022, under file number 22-00274749, a continuation filed June 6, 2022, under file number 22-00284084, an additional financing statement filed September 29, 2022, under file number 22-0048072146, and a further financing statement filed September 14, 2023, under file number 23-0039958322, each filed with the Texas Secretary of State. The obligations under Loan 4806 are cross collateralized with Simmons Bank Loan xxxx4780. The outstanding balance owing on Loan 4806 was $396,615.96 as of May 1, 2026.

b. **Treatment**: Simmons Bank will receive on the Effective Date in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Class 4I Claim, a Senior Secured Post-Confirmation Note and related Commercial Security Agreement from the Reorganized Debtors, providing for the full payment of the Allowed Class 4I Claim, in accordance with the following terms:

(i) **Principal.** The amount of the Senior Secured Post-Confirmation Note shall be equal to the Allowed Class 4I Claim, which shall include all unpaid principal, accrued interest, through the Effective Date, and reasonable attorney's fees and costs allowed pursuant to section 506(b) of the Bankruptcy Code.

(ii) **Interest.** Interest shall accrue at an annual rate of Prime (as published in *The Wall Street Journal*) plus one and one-half (1.50%) percent.

(iii) **Payment Terms**. Accrued interest shall only be due and payable monthly in arrears for 17 consecutive months, with all outstanding principal and unpaid interest due and payable at maturity, provided, however, that the Reorganized Debtors may, at their sole option, prepay the Senior Secured Post-Confirmation Note at any time, in full, without prepayment penalty, premium, or additional fee of any kind;

(iv) **Maturity Date**. Eighteen (18) months after the Effective Date; and

(v) **Retention of Lien**. The Holder of the Class 4I Allowed Secured Claim shall retain the Liens securing the Allowed Secured Claim until paid in full.

(vi) **No Refinance Obligation by Simmons Bank**. The Debtors and Simmons Bank contemplate that Loan 4806 will need to be refinanced, extended, amended, or paid in full on the Maturity Date. There can be no assurance that such loan will be refinanced or replaced at such time, and Simmons Bank has no obligation to refinance, extend, or amend the loan at such time. For purposes of the Plan Projections, the $2,727.00 monthly interest payment is included for the full 36 month period for the Plan Projections.

7.3 **Class 4J--Simmons Bank Attorney's Fees & Costs**. The Allowed Secured Claim of Simmons Bank pursuant to section 506(b) of the Bankruptcy Code as an oversecured creditor is classified as a separate 4J Claim as follows, and treated as provided in Section 7.3(b):

a. The contractual claims of Simmons Bank for its reasonable and necessary attorneys' fees and costs of collection under the respective loan agreements between the Debtors and Simmons Bank on account of it holding liens on Collateral with a value in excess of the underlying debt as provided by section 506(b) of the Bankruptcy Code. The Debtors estimate that the total amount owing to Simmons Bank for such reasonable and necessary fees and costs is estimated to be $70,000, comprised of $35,000 owed by CDS and $35,000 owed by Logistics.

b. Simmons Bank will receive on the Effective Date in full satisfaction, settlement, release and discharge of and in exchange for its Class 4J Claim,

a Senior Secured Post-Confirmation Note and related Commercial Security Agreement from the Reorganized Debtors, providing for the full payment of the Allowed Class 4J Claim, in accordance with the following terms:

(i) **Principal.** The amount of the Senior Secured Post-Confirmation Note shall be equal to the Allowed Class 4J Claim, which shall include all reasonable attorneys' fees and costs incurred by Simmons Bank through the Effective Date. Simmons Bank shall provide a statement of its fees and costs to the Debtors reflecting all such fees and shall not be required to submit a formal request of pleading seeking allowance of such fees and costs absent an objection to such fees by the Debtors on or before the Confirmation Date. Should the Debtors object to such fees or costs, the Debtors shall specify which particular time entries or costs to which they object, otherwise the objection shall be waived.

(ii) **Interest.** No interest shall accrue on the Allowed Class 4J Claim.

(iii) **Payment Terms**. The Allowed Class 4J Claim shall be paid in thirty-six (36) equal monthly installments of $1,944.44; provided, however, the Reorganized Debtors may, at their sole option, prepay the Class 4J Claim at any time, in full, without prepayment penalty, premium, or additional fee of any kind;

c. **Maturity Date**. Thirty-six (36) months after the Effective Date; and

d. **Retention of Lien**. The Holder of the Class 4J Allowed Secured Claim shall retain the Liens securing the Allowed Secured Claim until paid in full.

7.4 **Alternate Treatment**: Notwithstanding the foregoing, the Debtors or the Reorganized Debtors and the holder of the Allowed Classes 4A to 4J Secured Claims may agree to any alternate treatment, which treatment may include preservation of such holder's Lien; provided however, that such treatment will not provide a return to such holder having a present value in excess of the amount of such holder's Allowed Class 4 Secured Claim. Any such agreement must be presented to the Bankruptcy Court for approval at or prior to the Effective Date and will not materially and adversely impact the treatment of any creditor under the Plan.

## ARTICLE 8

## PROVISIONS FOR TREATMENT OF THE ALLOWED OTHER SECURED CLAIMS (CLASSES 5A TO 5M)

8.1 The Secured Tax Lien Claims, held by the Holders of Other Secured Claims are classified in separate Allowed Class 5A to 5E Claims as follows, and treated as provided in Section 8.1(f):

a. **Class 5A**—The Allowed Secured Claims of Harris County and related taxing jurisdictions (as set forth in the Creditor's Proof of Claim) for *ad*

*valorem* taxes on personal property of Logistics in the amount of $16,441.32. The claim represents a statutory tax lien secured by Sections 32.01 and 32.05 of the Texas Property Tax Code.

b. **Class 5B**—The Allowed Secured Claims of Spring Branch Independent School District for *ad valorem* taxes on personal property of Logistics in the amount of $8,581.95. The claim represents a statutory tax lien secured by Sections 32.01, 32.05, and 32.07 of the Texas Property Tax Code.

c. **Class 5C**—The Allowed Secured Claims of Spring Branch Independent School District for *ad valorem* taxes on personal property of CDS in the amount of $11,287.52. The claim represents a statutory tax lien secured by Sections 32.01, 32.05, and 32.07 of the Texas Property Tax Code.

d. **Class 5D**—The Allowed Secured Claims of the City of Houston for *ad valorem* taxes on personal property of Logistics in the amount of $3,270.97. The claim represents a statutory tax lien secured by Sections 32.01, 32.05, and 32.07 of the Texas Property Tax Code.

e. **Class 5E**—The Allowed Secured Claims of the City of Houston for *ad valorem taxes* on personal property of CDS in the amount of $10,569.95. The claim represents a statutory tax lien secured by Sections 32.01, 32.05, and 32.07 of the Texas Property Tax Code.

f. **Treatment**—Except to the extent that the holder of an Allowed Secured Tax Claim in Class 5A to 5E has been paid by a Debtor prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Secured Tax Claim in Class 5A to 5E will receive on account of such Claim deferred cash payments of a total value as of the Effective Date of the Plan, equal to the amount of such Claim, with interest at the statutory rate established by the Texas Property Tax Code accruing from the Petition Date until the date paid, either (A) within 180 days after the Effective Date, or (B) over a period not exceeding five years from the Petition Date. The Debtors believe that the Holders of Claims in Classes 5A to 5E are fully secured pursuant to section 506(b) of the Bankruptcy Code and have priority over all contractual lien claims pursuant to the priority provisions established by section 32.01 *et seq*. of the Texas Property Tax Code. The Holders of the Class 5A to 5E Allowed Secured Claim shall retain the Liens securing the Allowed Secured Claim (for pre-petition taxes as well as the post-petition liens), until all such claims are paid in full. The Debtors or Reorganized Debtors shall pay all post-petition *ad valorem* taxes in the ordinary course of business, prior to delinquency, and be subject to applicable non-bankruptcy law. No administrative expense claim or request for payment of post-petition *ad valorem* tax claims is required for the Reorganized Debtors' payment of *ad valorem* taxes.

8.2 The secured rolling stock and equipment loans, held by the Hitachi Financial and Ally Financial as Holders of Other Secured Claims that did not obtain stay relief and/or receive a post-petition return of collateral (as opposed to Daimler, The Huntington Bank, and BMO which received their collateral), are classified in separate Allowed Class 5F and 5G Claims, and treated as provided in Section 8.2(c):

a. **Class 5F**—Hitachi Capital America Corp. Loan No. xx4276 to CDS dated July 16, 2021, in the original principal amount of $82,117.68, payable in 72 installment payments of $1,443.80 that began on August 16, 2021, with a final payment due on the maturity date of July 15, 2027. Repayment of the Loan is secured by a Texas Certificate of Title on a 2020 Silverado Truck (VIN# 1HTKHPVM4LH597832) in the possession of Hitachi and the grant of liens and security interests in the property as described in the Motor Vehicle Security Agreement dated July 16, 2021. The current outstanding balance owing on Loan xxx-xx4276 was $19,836.05 as of May 1, 2026.

b. **Class 5G**—Ally Financial Loan No. xx2325 to CDS dated August 27, 2022, in the original principal amount of $46,798.58, payable in 72 installment payments of $861.91 that began on October 11, 2022, with a final payment due on the maturity date of October 10, 2027. Repayment of the Loan is secured by a Texas Certificate of Title on a 2019 Ford Super Duty F-250 SRW (VIN# 1FT7W2BT0KEC87345) in the possession of Ally and the grant of liens and security interests in the property as described in the Motor Vehicle Retail Installment Sales Contract dated August 27, 2022. The current outstanding balance owing on Loan xx2325 was $21,440.67 as of May 1, 2026.

c. **Treatment of Classes 5F to 5G**: Each holder of an Allowed Other Secured Claim in Classes 5F to 5G against a Debtor will, at the sole option of the Debtor, receive on the Effective Date on account of its Allowed Other Secured Claim (a) treatment as provided under section 1124 of the Bankruptcy Code with the reinstatement of the loans, with any Cash payments required under section 1124(2) of the Bankruptcy Code being made on the Effective Date; or (b) such holder's Collateral. If the holder of an Allowed Other Secured Claim receives treatment as provided in (a) above, such holder will retain the Liens securing the Allowed Other Secured Claim until paid in full. Any Deficiency Amount relating to an Allowed Other Secured Claim will be treated as a Class 6 General Unsecured Claim.

8.3 **Class 5H**: The secured loan held by the US Small Business Administration, issued as a Secured Disaster Loan, as the Holder of an Other Secured Claims is classified in a separate Allowed Class 5H Claim, and treated as provided in Section 8.3(b):

a. **Class 5H**—US Small Business Administration (SBA Loan Number xxx8001) to CDS dated June 24, 2020, in the original principal amount of $150,000.00, payable over 360 monthly installments (with varying interest rate adjustments as described in the note), which began on July 24, 2020,

with a final payment due on the maturity date of June 26, 2050. Repayment of the Loan is secured by a Security Agreement dated June 24, 2020, granting the secured party a lien on all of the debtor's equipment, machinery, FF&F, accounts, proceeds, inventory, general intangibles, commercial tort claims and all related assets as described therein, perfected by the filing of an initial UCC-1 financing statement on filed July 3, 2020, under no. 20-0032439841, and continued thereafter by a continuation filing on June 25, 2025, under no. 25-00333020, with the Texas Secretary of State. The outstanding balance owing on Loan 8001 was $150,000.00 as of May 1, 2026.

b. **Treatment:** The Debtors will reinstate the SBA Loan 8001 and cure any monetary default thereunder such that on the Effective Date, the SBA will receive on account of its Allowed Other Secured Claim in Class 5H, treatment as provided under section 1124 of the Bankruptcy Code, with any Cash payments required under section 1124(2) of the Bankruptcy Code being made on the Effective Date. The SBA will retain the Liens securing the Allowed Other Secured Claim in Class 5H until paid in full. With respect to the cure of any past-due monetary obligations under SBA Loan 8001, the outstanding interest was $7,965.21 as of May 19, 2026. At the sole option of the Reorganized Debtors, they will either (A) make a one-time payment on the Effective Date of the amount necessary to cure any past-due monetary obligation, or (b) pay the monetary cure obligation over a period of 24 months in equal installments, without interest, with the first payment due on the Effective Date, with the remaining installments made on the first date each succeeding calendar month until paid in full.

8.4 **Merchant Arrangements**: The financial accommodations and purported secured claims held by various MCA Parties, as the Holder of an Other Secured Claims are separately classified in Classes 5I to 5M Claim as follows, and treated as provided in Section 8.4(f):

a. **Class 5I**—Union Funding Source, Inc. ("***UFS***") Future Receivables Sale and Purchase Agreement to CDS (along with Logistics, and an unaffiliated non-debtor The 100 Club, Inc. [a 501(c)(3) charity]), (collectively, as the Merchant(s), dated June 26, 2025, in the original purchase price of $150,000.00, of a Purchased Amount of $219,000, of the Merchant(s) accounts and payment rights. On June 30, 2025, UFS, through Corporate Service Company, as Representative filed an initial UCC-1 financing statement, under no. 250035224558. The Debtors believe that the outstanding amount of the financial accommodations under the UFS Future Accounts Sale Agreement was $121,000.00 as of the Petition Date. The Debtors believe there is no value pursuant to section 506(b) of the Bankruptcy Code with respect to the purported claim of security in the Debtors' accounts.

b. **Class 5J**—Fox Funding Group, LLC ("***FFG***") Future Receivables Sale and Purchase Agreement to CDS (along with non-debtor R&R Transport and

Logistics Management, LLC), (collectively, as the Merchant(s), dated May 28, 2025, in the original purchase price of $100,000.00, of a Purchased Amount of $146,000, of the Merchant(s) accounts and payment rights. On May 29, 2025, FFG, through CT Corporation System, as Representative filed an initial UCC-1 financing statement, under no. 25-0025743886, claiming a lien on the Debtors' accounts. The Debtors believe that the outstanding amount of the financial accommodations under the FFG Future Accounts Sale Agreement was $67,857.10 as of the Petition Date. The Debtors believe there is no value pursuant to section 506(b) of the Bankruptcy Code with respect to the purported claim of security in the Debtors' accounts.

c. **<u>Class 5K</u>**—EBF Holdings, LLC d/b/a Everest Business Funding ("***EBF***") Revenue Based Financing Agreement to Logistics, dated June 25, 2025, in the original purchase price of $60,000, of a Purchased Amount of $88,000, of the Seller's accounts and payment rights. On July 7, 2025, EBF, through Corporate Service Company, as Representative filed an initial UCC-1 financing statement, under no. 25-0039108028, claiming a collateral interest in the Debtors' Future Receipts. The Debtors believe that the outstanding amount of the financial accommodations under the EBF Agreement was $56,595.00 as of the Petition Date. The Debtors believe there is no value pursuant to section 506(b) of the Bankruptcy Code with respect to the purported claim of security in the Debtors' accounts.

d. **<u>Class 5L</u>**—ODK Capital LLC ("***ODK***") Business Loan and Security Agreement to Logistics, dated April 7, 2025, in the original advance amount of $175,000, with a repayment amount of $235,439.88, of the Seller's accounts and payment rights. On April 8, 2025, ODK, through Assn Company filed an initial UCC-1 financing statement, under no. 25-0013998926, claiming a collateral interest in all assets of the Debtors. The Debtors believe that the outstanding amount of the financial accommodations under the ODK Agreement was $185,635.29 as of the Petition Date. The Debtors believe there is no value pursuant to section 506(b) of the Bankruptcy Code with respect to the purported claim of security in the Debtors' assets and that any claim of ODK is unsecured.

e. **<u>Class 5M</u>**—Forward Financing ("***Forward***") Future Receipts Sale Agreement to CDS, dated February 10, 2025, in the original net purchase price of $97,500, of a Purchased Amount of $154,000, of the Seller's Future Receipts and payment rights. The Debtors have been unable to locate a UCC financing statement filed by Forward to perfect a lien on any property including a claim against the Debtors' Future Receipts. The Debtors believe that the outstanding amount of the financial accommodations under the Forward Agreement was $56,892.40 as of the Petition Date. At the present time, the Debtors believe that any claim of Forward is a General Unsecured Claim. To the extent that Forward can substantiate the perfection of a Lien on the Debtors' assets, the Debtors believe there is no value pursuant to

section 506(b) of the Bankruptcy Code with respect to the purported claim of security in the Debtors' accounts and that any claim of Forward is unsecured.

f. **<u>Treatment</u>:** The Claims of the holders of Class 5I to 5M Other Secured Claims are disputed by the Debtors and the Debtors have listed a potential claim against each of the holders of Claims in Class 5I to 5M among the Retained Claims and Causes of Action listed on **<u>Exhibit C</u>**. To compromise and settle all claims of the MCA Parties, pursuant to the terms of this Plan and Bankruptcy Rule 9019, each of the Debtors will pay three annual installments (referred to hereafter as the "***MCA Parties' 9019 Settlement Amounts***"), which is set forth in the waterfall of payments in the Plan Projections (which amounts are before the amount that is computed as the Disposable Income that will be paid to the Holders of Class 6 General Unsecured Claims) for each Debtor. No post-petition interest, costs, or attorney's fees will be paid on account of any Allowed Class 5I to 5M Claim. No Distribution will be made to the holder of any disputed Class 5I to 5M claim pending the resolution of any claim objection or adversary proceeding relating to any such disputed MCA Party claim. No additional or further payments beyond the three annual installments of the MCA Parties' 9019 Settlement Amount for each Debtor shall be paid after the three annual installment payments.

**<u>Affirmative Election Option</u>:** If an MCA Party votes to affirmatively elect to accept the proposed settlement treatment in its Ballot, then the electing MCA Party, along with all other MCA Parties that affirmatively elect the Plan treatment provided in this Section, shall receive *pro rata* annual distributions consistent with the proportion that each accepting MCA Parties' Allowed Claim bears to the aggregate allowed amount of all electing Class 5I to 5M Allowed Claims. The first payment of the electing MCA Parties' 9019 Settlement Amount shall be made on the one-year anniversary of the Effective Date, with the second and third installments to be paid on the second and third anniversary dates thereafter. The payments provided by the MCA Parties' 9019 Settlement Amount shall be in full satisfaction, exchange, compromise, and settlement of all Claims held by the MCA Parties, including any claims against Randy Russell and Ray Cantrell, individually, whether such claim is on account of a personal guaranty or otherwise, and any such personal claims are released and forever waived by such electing MCA Party.

**<u>Deemed Opt-Out Option</u>:** If an MCA Party does not formally elect to accept the proposed treatment on the Ballot, or does not vote to accept or reject the Plan, then any MCA Party that fails to affirmatively accept the treatment will be deemed to be an Opt-Out non-electing party, and as an Opt-Out non-electing MCA Party, such party shall retain, subject to the Plan

discharge and Confirmation Order, its claims and defenses in connection with any proof of claim filed and the resolution of such claim as part of the post-confirmation claims resolution process and/or any adversary proceeding. In any event, to the extent that the holders of Claims in Class 5I to 5M of any non-electing Opt-Out MCA Party are determined to hold Allowed Claims, such claims shall be treated as General Unsecured Claims in Classes 6A and 6B of this Plan.

8.5 **Alternate Treatment**: Notwithstanding the foregoing, the Debtors or the Reorganized Debtors and the holder of the Allowed Classes 5A to 5M Other Secured Claims may agree to any alternate treatment, which treatment may include preservation of such holder's Lien, if any; provided however, that such treatment will not provide a return to such holder having a present value in excess of the amount of such holder's Allowed Class 5 Secured Claim. Any such agreement must be presented to the Bankruptcy Court for approval at or prior to the Effective Date and will not materially and adversely impact the treatment of any creditor under the Plan. To the extent that a party to an executory contract or unexpired lease filed a proof of claim as a secured creditor, such Claim shall be treated in accordance with the terms of such executory contract or unexpired lease and the provisions of Article 17 hereunder.

## ARTICLE 9

## PROVISIONS FOR TREATMENT OF THE GENERAL UNSECURED CLAIMS (CLASSES 6A AND 6B)

9.1 **Class 6A and 6B Treatment**: Class 6A is comprised of the claims held by the holders of Allowed General Unsecured Claims against Logistics. Class 6B is comprised of the claims held by the holders of Allowed General Unsecured Claims against CDS. As set forth in the Plan Projections, the Debtors have computed Disposable Income for each Debtor. The holders of claims against the respective Debtor will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claims, Pro Rata Distributions consistent with the proportion that each creditor’s Allowed General Unsecured Claim bears to the aggregate allowed amount of all Class 6A or 6B Claims (as may be the case) until either (A) all of the respective Debtor’s Disposable Income over the three-year Commitment Period has been distributed, or (B) such Allowed Claims have been paid in full from the respective Debtor’s Disposable Income over the three-year Commitment Period. No further payments of Disposable Income shall be paid after the three-year Commitment Period. Similarly, no further payments shall be made during the Commitment Period if the holders of Allowed Class 6A or Class 6B Claims have been paid in full. No post-petition interest, costs, or attorney’s fees will be paid on account of any Allowed Class 6A and 6B Claims.

## ARTICLE 10

## PROVISIONS FOR TREATMENT OF INSIDER CLAIMS AND INTERCOMPANY CLAIMS (CLASS 7)

10.1 **Treatment**: The Claims of the Insiders against a Debtor or any Intercompany Claim shall not be included in the Class of General Unsecured Claims. Unless and until the holders

of Allowed General Unsecured Claims have received their pro rata share of the Disposable Income distributed, over the three-year Commitment Period of the Plan, no Distributions will be paid to the Holders of Insider Claims or any Intercompany Claim.

## ARTICLE 11

## PROVISIONS FOR TREATMENT OF THE INTERESTS IN A DEBTOR (CLASS 8)

11.1 **Treatment**: Holders of Interests will retain their respective Interests in a Debtor. Provided, however, the Debtors shall make no distributions on account of such Interests until such time as all distributions have been made to the Holders of Allowed General Unsecured Claims over the three-year Commitment Period of the Plan.

## ARTICLE 12

## MEANS FOR EXECUTION OF THE PLAN

12.1 **Closing**: A Closing of the transactions contemplated by the Plan shall take place on the Effective Date at the offices of Joseph G. Epstein PLLC, 24 Greenway Plaza, Suite 970, Houston, Texas 77046, or at such other place identified in a notice provided to those parties listed on the Post-Confirmation Service List.

12.2 **Execution of Documents and Corporate Actions**: The Debtors shall deliver all Plan Documents and perform all actions reasonably contemplated with respect to the implementation of the Plan. Each of Randy Russell and Ray Cantrell are designated as the authorized representatives of the Debtors and Reorganized Debtors (i) to execute on behalf of the Debtors or Reorganized Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtors and Reorganized Debtors to consummate the Plan.

12.3 **Issuance of Senior Secured Note**: On the Effective Date, the Reorganized Debtors will take all necessary action to execute and deliver to Simmons Bank the Senior Secured Post-Confirmation Note and related Commercial Security Agreements as set forth in this Plan.

12.4 **No Substantive Consolidation**: The Plan does not provide for the Substantive Consolidation of the Debtors' assets and liabilities into a single business enterprise post-confirmation. Each Debtor will remain a separate business enterprise under applicable Texas law and each of the business organizations' formation and governance instruments.

12.5 **Continuation of Business Operations**: From and after the Effective Date of the Plan, the Reorganized Debtors are authorized to continue their normal business operations and enter into such transactions as they deem advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise in the Plan.

# ARTICLE 13

## VESTING OF PROPERTY, DISCHARGE AND INJUNCTION

13.1 **Vesting of Property of the Estate in Reorganized Debtors**: On the Effective Date, all property of the Debtors and of the Estates shall vest in the Reorganized Debtors free and clear of any Lien, Claim, Interest or Encumbrances (collectively, "***Lien***"), except as otherwise provided in the Plan. The Reorganized Debtors shall have a power of attorney and authorization to file UCC termination statements with respect to UCC financing statements upon which the Liens or a UCC filing to reflect a notice of interest in collateral and/or Future Receipts have been discharged by the Plan and/or disallowed by order of the Bankruptcy Court.

13.2 **Discharge of Debtors**:

a. If the Debtors' Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt: (i) imposed or Reinstated by this Plan; or (ii) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

b. If the Debtors' Plan is confirmed under section 1191(b) of the Bankruptcy Code, Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtors will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in section 1192 of the Bankruptcy Code; or (ii) excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c).

13.3 **Scope of Discharge**: Except as otherwise provided in the Plan or the Confirmation Order, the rights granted in the Plan and the treatment of the Claims and Interests shall be in exchange for, and in complete satisfaction, discharge and release of, all Claims or Interests of any nature whatsoever against the Debtors and any of the of the Estate Property, whether such Claims or Interests arose before or during the Chapter 11 Cases or in connection with the implementation of the Plan. The discharge of the Debtors will be effective as to each Claim and Interest, whether or not the Claim or Interest constituted an Allowed Claim or Allowed Interest and whether or not the holder of the Claim or Interest voted to accept the Plan. In addition, the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets and properties, except as otherwise provided in the Plan. As provided in section 524 of the Bankruptcy Code, the discharge operates as an injunction against the prosecution of any Claim or Interest so discharged. For the avoidance of doubt, except for an electing MCA Party for the Plan treatment of such claims, nothing in this Plan discharges any Claim against any Person other than the Debtors or Reorganized Debtors.

13.4 **Injunction**: Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors and who have held, hold, or may hold Interests in the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, or the Reorganized Debtors, or their property, with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim or Interest against the Debtors, or the Reorganized Debtors, or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or the Reorganized Debtors, or its property with respect to such Claim or Interest, and (d) asserting any right of subrogation of any kind against any obligation due the Debtors, or the Reorganized Debtors, or the property of the Debtors or the Reorganized Debtors with respect to any such Claim or Interest. The injunction provision is not intended to enjoin, and will not enjoin, actions against parties who are not Debtors herein, except actions against such non-Debtor parties relating to Claims against or Interests in the Debtors. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this case pursuant to section 105, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. This injunction shall remain in effect only for so long as the Reorganized Debtors are not in default of the Plan or any obligations set forth in applicable loan or financing documents. Any violation of the Plan by the Reorganized Debtors that remains uncured for thirty (30) days after receipt by the Reorganized Debtors of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction granted hereunder as to said affected party.

13.5 **Protection of Certain Parties in Interest**: Provided the respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents of the Debtors, the Reorganized Debtors, act in good faith, they will not be liable to any holder of a Claim or Interest, or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken from the Petition Date to the Effective Date in connection with (i) the operation of the Debtors or the Reorganized Debtors; (ii) the proposal or implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (iii) the administration of the Plan or the assets and property to be distributed pursuant to the Plan and the Plan Documents; other than for willful misconduct or gross negligence. The Debtors, the Reorganized Debtors, and their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors and the Reorganized Debtors, and such reliance will conclusively establish good faith. In any action, suit or proceeding by any holder of a Claim or Interest or other party in interest contesting any action by, or non-action of, the Debtors or the Reorganized Debtors or their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

13.6 **Causes of Action**: Any and all Avoidance Actions and rights pursuant to Chapter 5 of the Bankruptcy Code and all causes of action under state, federal or other applicable law are hereby preserved and retained for enforcement by the Reorganized Debtor after the Effective Date. Any recoveries under any Avoidance Actions from a Creditor in Class 6A or 6B shall be set off against the Claim of such Creditor prior to any distributions to such Creditor. Attached as **Exhibit C** is a list of all Retained Claims and Causes of Action.

13.7 **Compliance with Texas Statutes**: Following the Effective Date, the Reorganized Debtor will comply with Texas state tax laws (including by timely filing all required post-petition tax returns when due or timely filing a request for extension), and will pay all debts from and after the Effective Date (if any) owed to the Texas Comptroller, including any debt on account of any tax, interest, and penalties that are accrued and payable under applicable Texas law through the date of payment in the ordinary course, until the Reorganized Debtors are no longer required by applicable Texas law to maintain any such accounts, at which time the Reorganized Debtors shall take the appropriate steps to close such tax accounts. Notwithstanding anything in this Plan, Priority Tax Claims held by the Texas Comptroller for taxes incurred by the Debtors shall be paid in accordance with Class 3 of this Plan.

## ARTICLE 14

## DEFAULTS

14.1 **Events of Default**: An event of default shall have occurred if the Debtors or any other Person takes any action, fails to take any action, or fails to refrain from taking an action prevented, required, or otherwise set forth in the Plan.

14.2 **Events of Default and Remedies Regarding Simmons Bank:** Notwithstanding Section 14.3 below, in the event the Debtors do not make a payment required by the Plan or comply with any of the obligations to Simmons Bank under this Plan or as specified in the loan documents with Simmons Bank, Simmons Bank will send written notice of the default to the Debtors by email to: Randy Russell at randy@corporatedelivery.com and Ray Cantrell at rcantrell@corporatedelivery.com, with a copy to Joseph G. Epstein at joe@epsteintexaslaw.com, and the Debtors will have ten (10) Business Days to cure the default or defaults including the payment of interest that has accrued after the default. Simmons Bank is required to give only four (4) notices of default under the Plan. If a default is not cured or a fourth default occurs Simmons Bank shall be entitled to take any and all action authorized under Texas law to collect the remaining balance on its Allowed Class 4 Claims in either the Bankruptcy Court or any Texas State Court located in Harris County, Texas and to exercise its rights and remedies against all of the Debtors' assets that serve as collateral of Simmons Bank, including repossession and sale of the collateral.

14.3 **Remedies for Defaults**: Subject to section 1112 of the Bankruptcy Code, should an event of default occur by the Debtors or any other Person, at least one other party in interest (including a Debtor) shall provide written notice of the default to the defaulting party. If the default is not cured within ten (10) Business Days after service of the notice of default, the notifying party may present an *ex parte* order to the Bankruptcy Court setting a date and time when the defaulting party must appear before the Bankruptcy Court and show cause why it should not be held in

contempt of the Confirmation Order. If the defaulting party is found to be in default of the Plan, the Bankruptcy Court shall:

a. assess the costs of the Debtors or other party-in-interest proceeding on the order to show cause against the defaulting party, such costs to be the greater of the actual amounts incurred or $5,000; and

b. designate a person to appear, sign or accept on behalf of the defaulting party the documents required under the Plan in accordance with Federal Rule of Civil Procedure 70, or enter such other order compelling compliance with the Plan that may be necessary and that does not materially alter the terms of the Plan as confirmed.

## ARTICLE 15

## CLAIM OBJECTION PROCEDURES AND TREATMENT OF PROOFS OF CLAIM

15.1 **Right to Object to Claims**: The Reorganized Debtors shall have the exclusive right to object to the allowance of any proof of claim, including any Claim listed in the Schedules, including those Claims that may have originally been designated as not being contingent, unliquidated, or matured.

15.2 **Deadline for Claim Objections**: All Claim objections must be filed with the Bankruptcy Court no later than (i) ninety (90) days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims (the "***Claim Objection Deadline***"); otherwise such Claims shall be deemed allowed in accordance with section 502 of the Bankruptcy Code.

15.3 **Notices for Claim Objections**: Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Chapter 11 Cases on behalf of the Holder of a Claim.

15.4 **Settlement of Claim Objections**: Notice of any proceedings with respect to a Claim Objection, including a settlement or withdrawal, will be sufficient if served by the Reorganized Debtors on the holder of the Claim to which Objection has been made. Rule 9019 of the Bankruptcy Rules will not apply to the settlement or withdrawal of any Claim Objection.

15.5 **Reliance by Persons Dealing with Debtors**: In the absence of actual knowledge to the contrary, any Person dealing with the Reorganized Debtors shall be entitled to rely on the authority of the Reorganized Debtors with respect to the resolution of any claim objection or Avoidance Action.

## ARTICLE 16

## DISTRIBUTIONS AND RESERVE ACCOUNTS

16.1 **Plan Distributions from Reorganized Debtors**: The Reorganized Debtors shall have the exclusive responsibility to make Distributions to holders of Allowed Claims under the Plan.

16.2 **Distributions on Allowed Claims Only**: Distributions under the Plan shall be made only to the holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim or Disputed Interest shall not receive the consideration otherwise provided to such Claimant under the Plan.

16.3 **Delivery of Distributions**: Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtors are notified in writing of such holder's then current address.

16.4 **Unclaimed Distributions and Uncashed Checks**: If a Distribution to any Claimant is returned as undeliverable, the Debtors shall use reasonable efforts to determine such Claimant's then current address. After reasonable efforts, if the Debtors cannot determine such Claimant's then-current address, then unless and until the Debtors are notified of such Claimant's then-current address, no further Distributions shall be made to such Claimant, unless and until the Debtors are notified of such Claimant's then-current address. Such Distributions shall be set aside and held in a segregated interest-bearing account. All claims for undeliverable Distributions must be made on or before the later of the fourth anniversary of the Effective Date of the Plan, or the ninetieth (90th) day following the date on which such Claim is Allowed. After such date, all unclaimed Distributions attributable any Class revert to the Reorganized Debtors under section 347(b) of the Bankruptcy Code, and the Claim of any holder with respect to such Distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof. In no event shall any unclaimed Distribution escheat to any state.

## ARTICLE 17

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

17.1 **Assumption of Executory Contracts and Unexpired Leases**: Upon the Effective Date, the executory contracts and unexpired leases ("***Assumed Contracts***") listed on **Schedule 17.1** shall be deemed assumed by the Debtors in accordance with section 365 of the Bankruptcy Code. To the extent that any monetary default exists with respect to an Assumed Contract, the Reorganized Debtors shall make such cure payment under section 365(b) of the Bankruptcy Code within thirty (30) days of the Effective Date.

17.2 **Rejection of Executory Contracts and Unexpired Leases**: All executory contracts and unexpired leases that are not Assumed Contracts under this Plan are deemed rejected, unless otherwise dealt with by the Plan or the Confirmation Order, or any other Order of the Bankruptcy Court entered prior to the Effective Date, or which are the subject of a motion to assume pending on the Effective Date. For the avoidance of doubt, each of the financial accommodation arrangements with the MCA parties classified in Classes 5I to 5M are rejected. Any claim for rejection damages shall be treated under the treatment proposed under Section 8.4(f) hereof in full and final satisfaction of all claims pertaining to the underlying agreements and the Debtors' rejection of the agreements.

17.3 **Claims Based on Rejection of Executory Contracts of Unexpired Leases**: Any Claim for damages arising from the rejection of an executory contract or lease deemed rejected under the terms of the Plan must be asserted in a timely filed proof of claim. All proofs of claim with respect to Claims arising from the rejection of an executory contract or unexpired lease under the terms of the Plan shall be filed with the Bankruptcy Court no later than the thirtieth (30th) day following the earlier of: (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the Confirmation Date, and properly served on the Distribution Agent for the estate against which the Claim is asserted. Any Claims not filed within such times shall be forever barred from assertion against the Debtors or the Reorganized Debtors. The deadlines set forth herein shall not apply to claims for rejection damages for any executory contract or unexpired lease that a Debtor has previously rejected pursuant to order of the Court as the orders approving rejection of such contracts or leases established deadlines for filing such claims.

## ARTICLE 18

## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

18.1 **Impaired Classes to Vote**: Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated and undisputed in a Debtor's Schedules.

18.2 **Acceptance by Class of Creditors:** A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

18.3 **Reservation of Cramdown Rights**: In the event that any impaired class shall fail to accept this Plan in accordance with sections 1129(a) and 1191(a) of the Bankruptcy Code, the Debtors reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of the sections 1129(b) and 1191(b) of the Bankruptcy Code.

## ARTICLE 19

## RETENTION OF JURISDICTION

19.1 **Exclusive Bankruptcy Court Jurisdiction**: The Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases for the following purposes following the Confirmation Date:

a. To determine any and all objections to the allowance and classification of Claims or Interests;

b. To determine the validity and priority of any Lien;

c. To determine the Allowed Amount of any Secured Claim;

d. To allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate;

e. To determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease.

f. To consider and approve any modification of this Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order;

g. To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan;

h. To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors;

i. To issue orders in aid of execution and implementation of this Plan to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of this Plan;

j. To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan; and

k. To enter an order closing the Chapter 11 Cases.

19.2 **Limitation on Jurisdiction**: In no event shall the provisions of this Plan be deemed to confer on the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§157 and 1334.

## ARTICLE 20

## CONDITIONS TO CONFIRMATION AND CONSUMMATION OF PLAN

20.1 **Conditions to Consummation of Plan**: The Plan will not be effective unless the Confirmation Order becomes a Final Order.

20.2 **Annulment of Plan if Conditions Not Waived or Satisfied**: The Debtors reserve the right to waive any of the conditions precedent to the effectiveness of either the Confirmation Order or the Plan. If any of the conditions precedent are not waived and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtor and all parties in interest will return to the *status quo ante* immediately before the entry of the Confirmation Order.

## ARTICLE 21

## MISCELLANEOUS PROVISIONS

21.1 **Compliance with Tax Requirements**: In connection with this Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions hereunder shall be subject to such withholding and reporting requirements.

21.2 **Defects, Omissions and Amendments**: The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims, as far as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtor may propose amendments or alterations to the Plan before or after confirmation as provided in section 1193 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code. The Debtors may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1193 of the Bankruptcy Code.

21.3 **Withdrawal of Plan**: The Debtors reserve the right to withdraw this Plan at any time prior to the Confirmation Date. If the Debtors withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtors or any other person, or to prejudice in any manner the rights of the Debtors, the Debtors' estates or any person in any further proceedings involving the Debtors.

21.4 **<u>Due Authorization By Creditors</u>**: Each and every Creditor who elects to participate in the Distributions provided for herein warrants that the Creditor is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Creditor under this Plan.

21.5 **<u>Transfer of Claims</u>**: Any transfer of a claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this section 21.5. Notice of any such transfer shall be forwarded to the Persons on the Post-Confirmation Service List by registered or certified mail, as set forth herein. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest to be transferred. No transfer of a partial interest shall be allowed. All transfers must be of 100% of the transferee's interest in the Claim.

21.6 **<u>Severability</u>**: If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

21.7 **<u>Notices</u>**: Any notice required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered.

21.8 **<u>Governing Law</u>**: Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

21.9 **<u>Implementation</u>**: The Debtors and the Reorganized Debtors shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

[Remainder of page left intentionally blank]

DATED: May 27, 2026.

**R&R Transport and Logistics, LLP, a Texas limited liability partnership**

By: */Randy Russell/*
Randy Russell, Managing Member of R&R Transport and Logistics Management, LLC, its General Partner

**R&R Transport, Inc., a Texas corporation**

By: */Randy Russell/*
Randy Russell, President

**JOSEPH G. EPSTEIN PLLC**
24 Greenway Plaza, Suite 970
Houston, Texas 77046
(713) 222-8400 (telephone)
(713) 621-0046 (facsimile)
joe@epsteintexaslaw.com

By: */Joseph G. Epstein/*
Joseph G. Epstein
Texas Bar No. 06639320
S.D. Tex. 11733

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

# EXHIBIT A
# PLAN PROJECTIONS

EXHIBIT A-1

LOGISTICS PLAN PROJECTIONS

| Ordinary Income/Expenses | Months 1-12 | Months 13-24 | Months 25-36 | TOTAL |
|---|---|---|---|---|
| **R & R Logistics Case #25-36034** | | | | |
| **Projected Revenue** | | | | |
| Total Projected Revenue | $ 2,258,988 | $ 2,550,000 | $ 2,600,000 | $ 7,408,988 |
| | | | | |
| **Expenses** | | | | |
| Employee Payroll/Taxes | $ 147,000 | $ 152,880 | $ 158,995 | $ 458,875 |
| Office Lease/Bldg Payment | $ 19,200 | $ 19,776 | $ 20,369 | $ 59,345 |
| Utilities | $ 2,880 | $ 2,995 | $ 3,145 | $ 9,020 |
| HealthInsurance/Workers Comp | $ 3,500 | $ 4,025 | $ 4,629 | $ 12,154 |
| Insurance | $ 218,112 | $ 250,829 | $ 288,453 | $ 757,394 |
| Maintenance | $ 21,500 | $ 22,360 | $ 23,478 | $ 67,338 |
| Tolls/Parking | $ 5,400 | $ 5,400 | $ 5,400 | $ 16,200 |
| Fuel | $ 140,000 | $ 156,800 | $ 175,616 | $ 472,416 |
| Bank Service Charges | $ 2,500 | $ 2,500 | $ 2,500 | $ 7,500 |
| Contract Services (1099) | $ 1,410,140 | $ 1,657,500 | $ 1,700,000 | $ 4,767,640 |
| Telephone /Internet | $ 3,500 | $ 3,500 | $ 3,500 | $ 10,500 |
| Supplies | $ 9,000 | $ 9,360 | $ 9,828 | $ 28,188 |
| Computer & Software | $ 7,200 | $ 7,488 | $ 7,862 | $ 22,550 |
| Dues & Subscriptions | $ 652 | $ 652 | $ 685 | $ 1,989 |
| CPA Fees | $ 4,000 | $ 4,000 | $ 4,000 | $ 12,000 |
| Reserve | $ 20,000 | $ 20,000 | $ 20,000 | $ 60,000 |
| **Total Expenses:** | $ (2,014,584) | $ (2,320,065) | $ (2,428,460) | $ (6,763,109) |
| **Net Operating Income:** | $ 244,404 | $ 229,935 | $ 171,540 | $ 645,879 |
| | | | | |
| **Plan Payments** | | | | |
| **Class 1--Administrative Claims** | **$ 60,000** | | | |
| **Class 2--Priority Non-Tax Claims** | **$ -** | | | **$ -** |
| **Class 3--Priority Tax Claims (Comptroller)** | **$ 9,701** | | | **$ 9,701** |
| **Class 4--Secured Claims Simmons Only** | **$ 93,137** | **$ 90,206** | **$ 72,397** | **$ 255,740** |
| **Class 5--Secured Tax Claims** | **$ 10,331** | **$ 10,331** | **$ 10,331** | **$ 30,993** |
| **Total Payments Before MCA and DI** | **$ 173,169** | **$ 100,537** | **$ 82,728** | **$ 356,434** |
| **Amount Available Before MCA & Class 6 DI** | **$ 71,235** | **$ 129,398** | **$ 88,812** | **$ 289,445** |
| **MCA SETTLEMENT PAYMENT** | **$ 36,011** | **$ 36,011** | **$ 36,011** | **$ 108,033** |
| | | | | **$ -** |
| **DISPOSABLE INCOME FOR CLASS 6** | **$ 35,224** | **$ 93,387** | **$ 52,801** | **$ 181,412** |
| | | | | |
| **TOTAL ANNUAL PLAN PAYMENTS** | **$ 244,404** | **$ 229,935** | **$ 171,540** | **$ 645,879** |

**Date: May 27, 2026**



/s/

Randy Russell., Debtor's Representative

**EXHIBIT A-2**

**CDS PLAN PROJECTIONS**

| **Ordinary Income/Expenses** | **Months 1-12** | **Months 13-24** | **Months 25-36** | **TOTAL** |
|---|---|---|---|---|
| R & R Transport Case #25-36036 | | | | |
| **Revenue** | | | | |
| Total Revenue | $ 5,000,000 | $ 5,100,000 | $ 5,300,000 | $ 15,400,000 |
| | | | | |
| **Expenses** | | | | |
| Employee Payroll/taxes | $ 1,374,600 | $ 1,429,584 | $ 1,486,767 | $ 4,290,951 |
| Office Lease/Bldg Payment | $ 81,600 | $ 89,760 | $ 98,736 | $ 270,096 |
| Utilities | $ 42,000 | $ 44,940 | $ 48,086 | $ 135,026 |
| Health Insurance/ Workers Comp | $ 48,312 | $ 50,728 | $ 53,264 | $ 152,304 |
| Health Insurance Officers | $ 21,120 | $ 24,288 | $ 27,931 | $ 73,339 |
| Insurance | $ 105,708 | $ 124,735 | $ 147,188 | $ 377,631 |
| Life Insurance Officers | $ 22,296 | $ 22,296 | $ 22,296 | $ 66,888 |
| Bank Service Charges | $ 2,500 | $ 2,500 | $ 2,500 | $ 7,500 |
| Contract Services (1099) | $ 2,236,835 | $ 2,301,835 | $ 2,431,835 | $ 6,970,504 |
| Telephone /Internet/CXT | $ 86,000 | $ 86,000 | $ 86,000 | $ 258,000 |
| Rush Leasing | $ 106,712 | $ 106,712 | $ 106,712 | $ 320,136 |
| Maintenance | $ 40,000 | $ 42,000 | $ 44,100 | $ 126,100 |
| Car Allowance | $ 24,000 | $ 24,000 | $ 24,000 | $ 72,000 |
| Security | $ 1,548 | $ 1,703 | $ 1,873 | $ 5,124 |
| Taxes | $ 49,048 | $ 49,048 | $ 49,048 | $ 147,144 |
| Tolls/Parking | $ 2,700 | $ 2,700 | $ 2,700 | $ 8,100 |
| Fuel | $ 47,000 | $ 50,760 | $ 54,821 | $ 152,581 |
| Uniforms | $ 1,500 | $ 1,560 | $ 1,622 | $ 4,682 |
| Supplies | $ 6,000 | $ 6,250 | $ 6,500 | $ 18,750 |
| Computer & Software | $ 64,368 | $ 64,368 | $ 64,368 | $ 193,104 |
| Dues & Subscriptions | $ 1,200 | $ 1,200 | $ 1,200 | $ 3,600 |
| Trash | $ 3,500 | $ 3,500 | $ 3,500 | $ 10,500 |
| Reserve | $ 24,000 | $ 24,000 | $ 24,000 | $ 72,000 |
| Attorneys' Fees | $ 24,000 | $ 24,000 | $ 24,000 | $ 72,000 |
| CPA Fees | $ 20,000 | $ 20,000 | $ 20,000 | $ 60,000 |
| **Total Expenses:** | $ (4,436,547) | $ (4,598,466) | $ (4,833,047) | $ (13,868,060) |
| **Net Operating Income:** | $ 563,453 | $ 501,534 | $ 466,953 | $ 1,531,940 |
| | | | | |
| **Plan Payments** | | | | |
| **Class 1 Administrative Claims** | $ 60,000 | | | $ 60,000 |
| **Class 2 Priority Non-Tax Claims** | | | | |
| **Class 3 Priority Tax Claims (Comptroller)** | $ 9,706 | | | $ 9,706 |
| **Class 4--Secured Claims--Simmons Only** | $ 205,373 | $ 177,519 | $ 105,803 | $ 488,695 |
| **Class 5--Other Secured Claims** | $ 44,412 | $ 23,933 | $ 8,772 | $ 77,117 |
| **Class 5--Secured Tax Claims** | $ 7,982 | $ 7,982 | $ 7,982 | $ 23,946 |
| **Total Payments Before MCA and DI** | **$ 327,473** | **$ 209,434** | **$ 122,557** | $ 589,758 |
| **Amount Available Before MCA and Class 6 DI** | $ 235,980 | $ 292,100 | $ 344,396 | $ 690,821 |
| **MCA SETTLEMENT PAYMENT** | $ 20,405 | $ 20,405 | $ 20,405 | $ 61,215 |
| | | | | |
| **DISPOSABLE INCOME FOR CLASS 6#** | $ 215,575 | $ 271,695 | $ 323,991 | $ 811,261 |
| | | | | |
| **TOTAL ANNUAL PLAN PAYMENTS** | $ 553,747 | $ 501,534 | $ 466,953 | $ 1,522,234 |

**Date: May 27, 2026** **/s/** ______________________

**Randy Russell Debtor's Representative**

#Under Plan Section 9.1 once Class 6B Allowed Claims paid in full, DI payments cease.

**EXHIBIT B**
**LIQUIDATION ANALYSES**

**EXHIBIT B-1**

**LOGISTICS LIQUIDATION ANALYSIS**

| Asset Category | Liquidation Value | PMSI/Certificate Lender | Class | Secured Debt |
|---|---|---|---|---|
| Cash | 49,539 | | | |
| Accounts Receivable | 131,093 | Simmons Loan 4780 | 4F | 280,156 |
| Accounts Receivable | | Simmons Loan 4806 | 4I | 396,617 |
| Accounts Receivable | | Simmons Loan (506(b)) | 4J | 35,000 |
| | | | | |
| **Vehicles & Trailers** | | | | |
| Trailer 1 2018 GD VIN#1548 | 24,295 | | | |
| Trailer 2 2012 TRN VIN#3034 | 13,545 | | | |
| Trailer 3 2013 TRN VIN#9988 | 14,267 | | | |
| Trailer 4 2013 TRN VIN#9989 | 14,287 | | | |
| Trailer 5 2013 TRN VIN#4030 | 14,287 | | | |
| Trailer 6 2019 GD VIN#1305 | 17,134 | | | |
| Trailer 7 2019 GD VIN#1306 | 17,134 | | | |
| Trailer 8 2019 GD VIN#1307 | 17,134 | | | |
| Trailer 9 2015 GD VIN#5994 | 12,215 | | | |
| Trailer 10 2018 GD VIN#6769 | 14,872 | | | |
| Trailer 11 2018 GD VIN#6770 | 14,872 | | | |
| Trailer 12 2018 GD VIN#6771 | 14,872 | | | |
| Trailer 13 2007 GD VIN#4478 | 5,904 | | | |
| Trailer 14 2022 GD VIN#7126 | 18,414 | Simmons | 4G | 22,372 |
| Trailer 15 2022 GD VIN#7129 | 18,414 | Simmons | 4G | 22,372 |
| Trailer 16 2022 GD VIN#7130 | 18,414 | Simmons Loan 1604 | 4D | 17,868 |
| Trailer 17 2022 GD VIN#7131 | 18,414 | Simmons Loan 1604 | 4D | 17,868 |
| | | | | |
| **Trucks** | | | | |
| 2021 Chevy Silverado VIN#3968 | 39,918 | Simmons Loan 1525 | 4A | 28,347 |
| 2022 Freightliner VIN#4097 | 52,462 | Simmons Loan 1534 | 4B | 67,373 |
| 2021 Silverado HD VIN#2252 | 40,698 | Simmons Loan 1560 | 4C | 32,885 |
| 2022 FRGH VIN#6983 | 37,480 | Simmons Loan 4545 | 4E | 3,837 |
| | | | | |
| **Other Assets** | | | | |
| Equipment Fixed Assets | 980 | | | |
| Deposits | - | | | |
| | | | | |
| **LIQUIDATION VALUE BEFORE DEBT** | **620,645** | | | |
| Secured Tax Claim Harris County | (16,441) | | 5A | 16441 |
| Secured Tax Claim SBISD | (8,582) | | 5B | 8582 |
| Secured Tax Claim City of Houston | (3,271) | | 5D | |
| Simmons Loan 1525 | (28,347) | | 4A | |
| Simmons Loan 1534 | (67,373) | | 4B | |
| Simmons Loan 1560 | (32,885) | | 4C | |
| Simmons Loan 4545 | (3,837) | | 4E | |
| Simmons Loan 4780 | (140,078) | Note one-half joint loan | 4F | |
| Simmons Loan 4806 | (198,309) | Note one-half joint loan | 4I | |
| Simmons Attorneys Fees | (35,000) | Note one-half each debtor | 4J | |
| **AVAILABLE CASH FOR LIQUIDATION** | **86,522** | | | |
| | | | | |
| **LIQUIDATION WATERFALL** | | | | |
| Priority Non Tax | (9,701) | | | |
| Chapter 7 Trustee Statutory Fees | (15,000) | | | |
| Chapter 7 trustee Professional Fees | (25,000) | | | |
| Chapter 7 Trustee Tax and Accounting | (20,000) | | | |
| Chapter 11 Administrative Fees | (60,000) | | | |
| Total Liquidation Costs | **(129,701)** | | | |
| Available for Unsecured Claims & MCA | **(43,179)** | | | |
| Estimated % recovery liquidation | **0%** | | | |
| | | | | |
| Estimated MCA Claims | 324,103 | | | |
| Estimated percentage recovery in liquidation | **0%** | | | |
| | | | | |
| Estimated Unsecured Claims | 212,377 | | | |
| Estimated Disposable Income--3 years or less | 181,412 | | | |
| Estimated percentage recovery in plan | **85.42%** | | | |
| | | | | |
| Estimated MCA Claims | 324,103 | | | |
| Estimated percentage recovery in plan | **33%** | | | |

# EXHIBIT B-2

## CDS LIQUIDATION ANALYSIS

| Asset Category | Liquidation Value | Loan/Lender | Class | Secured Debt |
|---|---|---|---|---|
| **Cash** | 81,871 | | | |
| Accounts Receivable | 332,433 | Simmons Loan 4780 | 4F | 280,156 |
| Accounts Receivable | | Simmons Loan 4806 | 4I | 396,617 |
| Accounts Receivable | | Simmons Loan 6641 | 4H | 97,689 |
| Accounts Receivable | | Simmons Loan (506(b)) | 4J | 70,000 |
| Accounts Receivable | | SBA Disaster Loan | 5H | 157,965 |
| | | | | |
| **Vehicles & Trailers** | | | | |
| 2021 Silverado 6500 VIN#2252 | 40,698 | | | |
| 2021 Silverado 6500 VIN#3968 | 39,918 | | | |
| 2019 Ford Super Duty VIN#7345 | 21,637 | Ally Loan 2325 | 5G | 21,441 |
| 2020 Silverado VIN#7832 | 33,612 | Hitachi Loan 4276 | 5F | 19,836 |
| Freightliner Flatbed VIN 2556 | 26,731 | | | |
| Freightliner Flatbed VIN#2554 | 29,333 | | | |
| Freightliner Flatbed VIN#2555 | 28,256 | | | |
| Freightliner Flatbed VIN#2553 | 28,042 | | | |
| | | | | |
| **Other Assets** | | | | |
| Machinery & Equipment | 4,252 | | | |
| Deposits | - | | | |
| Furniture & Fixtures | 2,673 | | | |
| Software | - | | | |
| | | | | |
| **LIQUIDATION VALUE BEFORE DEBT** | **669,456** | | | |
| Secured Tax Claim SBISD | (11,288) | | 5C | |
| Secured Tax Claim City of Houston | (10,570) | | 5E | |
| Hitachi Financial Loan 4276 | (19,836) | | 5F | |
| Ally Loan 2325 | (21,441) | | 5G | |
| SBA Loan | (157,965) | | 5H | |
| Simmons Loan 4780 | (140,078) | Note one-half joint loan | 4F | |
| Simmons Loan 6641 | (97,689) | | 4H | |
| Simmons Loan 4806 | (198,309) | Note one-half joint loan | 4I | |
| Simmons Loan (506(b)) | (35,000) | Note one-half each debtor | 4J | |
| **AVAILABLE CASH FOR LIQUIDAITON** | **210,589** | | | |
| | | | | |
| **LIQUIDATION WATERFALL** | | | | |
| Priority Non Tax | (9,706) | | | |
| Chapter 7 Trustee Statutory Fees | (20,000) | | | |
| Chapter 7 trustee Professional Fees | (25,000) | | | |
| Chapter 7 Trustee Tax and Accounting | (20,000) | | | |
| Chapter 11 Administrative Fees | (60,000) | | | |
| Total Liquidation Costs | **(134,706)** | | | |
| Available for Unsecured Claims & MCA | **75,883** | | | |
| | | | | |
| Estimated Unsecured Claims | 121,188 | | | |
| Estimated percentage recovery in liquidation | **62.62%** | | | |
| | | | | |
| Estimated MCA Claims | 183,642 | | | |
| Estimated percentage recovery in liquidation | **0%** | | | |
| | | | | |
| Estimated Unsecured Claims | 121,188 | | | |
| Estimated Disposable Income--3 years or less | 811,261 | | | |
| Estimated percentage recovery in plan | **100%** | | | |
| | | | | |
| Estimated MCA Claims | 183,642 | | | |
| Estimated percentage recovery in plan | **33%** | | | |

**LOGISTICS CLAIM ANALYSIS**

| UNSECURED CLAIMS | Schedule | POC # | CREDITOR | | | Listed Amount | POC Amount | Disputed | Proposed Allowed | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| F | 3.1 | | EBF Holding | MCA | Unsecured | 56,595.00 | | Yes | - | MCA Treatment |
| F | 3.2 | | Forward Financing | MCA | Unsecured | 51,332.80 | | Yes | | MCA Treatment |
| F | 3.3 | | Fox Funding | MCA | Unsecured | 62,642.00 | | Yes | | MCA Treatment |
| F | 3.4 | | Goodyear Tire & Rubber | | Unsecured | 16,472.71 | | No | 16,472.71 | |
| F | 3.5 | | KACCALS Auto | | Unsecured | 8,745.27 | | No | 8,745.27 | |
| F | 3.6 | | North American Risk Services | | Unsecured | 10,000.00 | | No | 10,000.00 | |
| F | 3.7 | 8 | OnDeck | MCA | Unsecured | 185,635.29 | | Yes | - | MCA Treatment |
| F | 3.8 | 5 | Penske Truck Leasing | | Unsecured | 11,618.60 | 23,210.39 | No | 23,210.39 | |
| F | 3.9 | | PPLSI | | Unsecured | 808.65 | | No | 808.65 | |
| F | 3.10 | 10 | Ryder | | Unsecured | 22,120.66 | 35,205.92 | No | 35,205.92 | |
| F | 3.11 | 7 | Saxon Fleet Inc. | | Unsecured | 20,885.78 | 20,885.78 | No | 20,885.78 | |
| F | 3.12 | | Technomech | | Unsecured | 5,299.54 | | No | 5,299.54 | |
| F | 3.13 | | Union Funding | MCA | Unsecured | 114,500.00 | | Yes | - | Duplicate -- CDS |
| F | 3.14 | | Pitney Bowes Global Financial Service | MCA | Unsecured | 380.51 | | No | 380.51 | |
| F | 3.15 | | Randy Russell | | Unsecured | 15,257.68 | | Yes | - | Treated Class 7 Insider |
| F | 3.16 | | ULine | | Unsecured | 48.71 | | No | 48.71 | |
| F | 3.17 | | Union Funding | MCA | Unsecured | 114,500.00 | | Yes | | |
| | | 2 | Texas Comptroller | | Unsecured | - | 2,149.12 | No | 2,149.12 | Priority Treated in Class 3 |
| | | 2 | American Express National Bank | | Unsecured | - | 5,869.75 | Yes | 5,869.75 | |
| | | 3 | American Express National Bank | | Unsecured | - | 7,704.47 | No | 7,704.47 | |
| | | 6 | Texas Comptroller | | Unsecured | | 2,508.06 | No | 2,508.06 | Remainder Priority |
| | | 7 | AMEX TRS Co., Inc. | | Unsecured | - | 21,692.85 | No | 21,692.85 | |
| | | 9 | EverBank as assignee of BMO | | Unsecured | - | 51,394.98 | No | 51,394.98 | Deficiency |
| | | 11 | Huntington National Bank | | Secured | | 59,843.80 | Yes | - | Collateral returned |
| **TOTAL PROJECTED UNSECURED** | | | | | | | | | **212,376.71** | |
| | | | | | | | | | | |
| MCA CLAIMS | | | | | | | | | | |
| F | 3.1 | 13 | EBF Holding | MCA | Secured | 56,595.00 | 87,135.00 | Yes | 87,135.00 | MCA Treatment |
| F | 3.2 | | Forward Financing | MCA | Unsecured | 51,332.80 | | Yes | 51,332.80 | |
| F | 3.3 | 9 | Fox Funding | MCA | Unsecured | 62,642.00 | 62,642.00 | Yes | - | CDS--MCA Treatment/Duplicate |
| F | 3.13 | 6 | OnDeck | MCA | Secured | 185,635.29 | 185,635.29 | Yes | 185,635.29 | |
| F | 3.13 | 8 | Uniques [sic] [Union] Funding | MCA | Unsecured | 121,000.00 | 121,000.00 | Yes | - | CDS --MCA Treatment/Duplicate |
| **TOTAL PROJECTED MCA** | | | | | | | | | **324,103.09** | |

CORPORATE DELIVERY CLAIMS ANALSYIS

| UNSECURED CLAIMS | Schedu | POC | CREDITOR | | | Listed Amount | POC Amount | Disputed? | Proposed Allowed | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| F | 3.1 | | Brett Enterpises | | Unsecured | 684.24 | | No | 684.24 | |
| F | 3.2 | | Cintas | | Unsecured | 4,359.75 | | No | 4,359.75 | |
| F | 3.3 | | City of Houston Sign Administrarion | | Unsecured | 439.34 | | No | 439.34 | |
| F | 3.4 | | City of Houston Water | | Unsecured | 248.28 | | No | 248.28 | |
| F | 3.5 | | EBF Holding | MCA | Unsecured | 56,595.00 | | Yes | - | Treated as MCA |
| F | 3.6 | | EIXNet/E-IT Consulting | | Unsecured | 4,150.00 | | No | 4,150.00 | |
| F | 3.7 | 8 | Family Truck Tire | | Unsecured | 1,863.30 | 18,138.68 | No | 18,138.68 | |
| F | 3.8 | | Federal Express | | Unsecured | 68.52 | | No | 68.52 | |
| F | 3.9 | | Forward Financing | MCA | Unsecured | 51,332.80 | | | | Treated as MCA |
| F | 3.10 | | Fox Funding | MCA | Unsecured | 62,642.00 | | | | Treated as MCA |
| F | 3.11 | | Harris County Tax Assessor-Collector | | Unsecured | 11,299.68 | | Yes | - | Treating as Class 5 claim |
| F | 3.12 | | Kacals | | Unsecured | 3,499.71 | | No | 3,499.71 | |
| F | 3.13 | | OnDeck | MCA | Unsecured | 185,635.29 | | Yes | - | Treated as MCA |
| F | 3.14 | | Pitney Bowes Global Financial Services | MCA | Unsecured | 380.51 | | No | 380.51 | |
| F | 3.15 | | Randy Russell | | Unsecured | 15,257.68 | | Yes | - | Treated Class 7 Insider |
| F | 3.16 | | ULine | | Unsecured | 48.71 | | No | 48.71 | |
| F | 3.17 | | Union Funding | MCA | Unsecured | 114,500.00 | | Yes | | |
| | | 1 | Daimler | | Secured | - | 166,258.36 | Yes | - | Collateral Returned |
| | | 2 | American Express National Bank | | Unsecured | - | 5,869.75 | Yes | 5,869.75 | |
| | | 3 | American Express National Bank | | Unsecured | - | 7,704.47 | No | 7,704.47 | |
| | | 6 | Texas Comptroller | | Unsecured | | 2,508.06 | No | 2,508.06 | Remainer Priority |
| | | 7 | AMEX TRS Co., Inc. | | Unsecured | - | 21,692.85 | No | 21,692.85 | |
| | | 9 | EverBank as assignee of BMO | | Unsecured | - | 51,394.98 | No | 51,394.98 | Deficiency |
| **TOTAL PROJECTED UNSECURED** | | | | | | | | | **121,187.85** | |
| | | | | | | | | | | |
| **MCA CLAIMS** | | | | | | | | | | |
| F | 3.5 | | EBF Holding | MCA | Unsecured | 56,595.00 | | Yes | - | Logistics |
| F | 3.9 | | Forward Financing | MCA | Unsecured | 51,332.80 | | Yes | | Logistics |
| F | 3.1 | 11 | Fox Funding | MCA | Unsecured | 62,642.00 | 62,642.00 | Yes | 62,642.00 | |
| F | 3.13 | | OnDeck | MCA | Unsecured | 185,635.29 | | Yes | | Logistics |
| F | 3.17 | 10 | Union Funding | MCA | Unsecured | 114,500.00 | 121,000.00 | Yes | 121,000.00 | |
| **TOTAL PROJECTED MCA** | | | | | | | | | **183,642.00** | |

**EXHIBIT C**
**LIST OF RETAINED CLAIMS AND CAUSES OF ACTION**

1. **Claims and causes of action against the MCA Parties under applicable law to have the underlying claims voided, including, but not limited to (A) a declaratory judgment that the purported sale of Accounts and/or Future Receipts are in substance loans and not true sales; (B) a declaratory judgment that the purported financial accommodations are unenforceable under applicable non-bankruptcy law; (C) claims for fraudulent inducement; (D) claims for fraudulent execution under applicable non-bankruptcy law; (E) declaratory judgment that the MCA Parties hold no perfected lien and no secured claims; (F) the claims of the MCA Parties should be disallowed under section 502(b)(1) of the Bankruptcy Code; (G) avoidance of preferential transfers and recovery under sections 547, 550, and 551 of the Bankruptcy Code; (H) avoidance of fraudulent transfers and recovery under sections 548 and 550 of the Bankruptcy Code; (I) usury under applicable law; (J)**

2. **Claim for Avoidance of Transfers under Chapter 5 of the Bankruptcy Code.**

3. **Claims against Fuqua & Associates PC and/or Richard L. Fuqua II for (A) legal malpractice and/or professional negligence the representation of the Debtors in these Subchapter V cases; (B) the disallowance of professional fees as counsel for the Debtors; and (C) disgorgement of fees and/or retainers paid by the Debtors.**

**SCHEDULE 17.1**
**ASSUMED CONTRACTS AND LEASES**

1. Commercial Property Lease for premises located at 1409 Brittmoore, Houston, Texas 77043, between 1409 Brittmoore LLC, as Landlord and R&R Transport, Inc., as Tenant

2. Master Vehicle Lease and Service Terms for all vehicles, trailers, and related equipment from PACCAR Leasing Company, a division of PACCAR Financial Corp., including:

   a. **Schedule No. 040626-1 RTL HOU (Rush Truck Leasing)**

   b. **Schedule No. 040626-2 RTL HOU (Rush Truck Leasing)**